PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 13-2192
_____

JANET BATCHELOR,
individually and on behalf of her
son; R.B., A Minor,
                          Appellants
v.

ROSE TREE MEDIA SCHOOL
DISTRICT; THE BOARD OF
SCHOOL DIRECTORS OF THE
ROSE TREE MEDIA SCHOOL
DISTRICT; LINDA
BLUEBELLO, Director of Pupil
Services of Rose Tree Media
School District; ERIC BUCCI,
Assistant Principal of Penncrest
High School;  NORMAN
HARRISON, Assistant Principal
of Penncrest High School;
RICHARD GREGG, Principal of
Penncrest High School; KAREN
WALKER; PATRICIA BARTA
_____

APPEAL FROM THE UNITED STATES
DISTRICT COURT FOR THE
EASTERN DISTRICT OF PENNSYLVANIA
(Case No. 2-11-cv-06733)
District Judge: Hon. C. Darnell Jones, II
_____

Argued: January 14, 2014
_____

Before: AMBRO, HARDIMAN, and GREENAWAY, JR.,
*Circuit Judges*.

(Opinion Filed: July 17, 2014)
_____

OPINION
_____

Frank Schwartz, Esq., *ARGUED*
Lamm Rubenstone
3600 Horizon Boulevard
Suite 150
Trevose, PA 19053
    *Counsel for Appellants*

Craig D. Ginsburg, Esq., *ARGUED*
Michael I. Levin, Esq.
Levin Legal Group
1800 Byberry Road
1301 Masons Mill Business Park
Huntingdon Valley, PA 19006
    *Counsel for Appellees*

GREENAWAY, JR., *Circuit Judge*.

Janet Batchelor ("Ms. Batchelor"), individually and on behalf of her son, Ryan Batchelor ("Ryan") (collectively "Appellants") filed suit against the Rose Tree Media School District ("District"), and six individual District employees[1] ("Individual Appellees") (collectively "Appellees")[2], asserting their entitlement to the statutory protections of the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. §§ 1400-1482, the Rehabilitation Act, 29 U.S.C. § 794(a) ("Section 504"), and the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101-12213. The District Court dismissed Appellants' federal claims pursuant to Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction because Appellants intentionally failed to exhaust the administrative remedies under the IDEA. This appeal followed.

---

[1] Individual Appellees include: (1) Linda Bluebello, the District's Director of Pupil Services; (2) Richard Gregg, the Principal of Penncrest High School; (3) Eric Bucci, an Assistant Principal of Penncrest High School; (4) Ralph Harrison, an Assistant Principal of Penncrest High School; (5) Patricia Barta, the Director of Special Education for the District; and (6) Karen Walker, a special education teacher at Penncrest High School. (Second Amended Complaint ("Complaint" or "Compl." ¶¶ 6-11) (Mar. 5, 2012.))

[2] Appellants' Complaint originally included the District's Board of School Directors as a Defendant, but Appellants voluntarily withdrew them.

3

On appeal, Appellants argue that the District Court erred in concluding that their federal claims are subject to the IDEA's exhaustion requirement. Alternatively, they argue that their claims are exempt from exhaustion. For the reasons provided below, we determine that Appellants' federal claims indeed fall within the ambit of the IDEA and require exhaustion, and further, that no exception to the IDEA's exhaustion requirement applies under the facts presented. We will therefore affirm the District Court's dismissal of Appellants' federal claims pursuant to Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction.

## I. BACKGROUND

### A. Factual Background

Because we are reviewing the District Court's grant of a motion to dismiss for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1), it is appropriate to draw the facts from the allegations contained in the Complaint, and to accept them as true. *See Taliaferro v. Darby Twp. Zoning Bd.*, 458 F.3d 181, 188 (3d Cir. 2006).

### 1. *Ryan's Freshman (2008-2009) and Sophomore Years (2009-2010)*

In December 2008, during his freshman year at Penncrest High School, Ryan was diagnosed with Attention Deficit Hyperactivity Disorder, which is designated as a disability within the meaning of Section 504. (Compl. ¶ 20.) The District developed and implemented a written 504 Plan ("504 Plan") for Ryan, pursuant to which the District placed Ryan in an achievement center for support and provided Ryan

4

with counseling and tutoring.[3]  These services continued throughout Ryan's freshman year; however, in October 2009, Ms. Batchelor learned that Ryan's guidance counselor had failed to schedule Ryan for placement in the achievement center for his sophomore year.  More important, Ryan's teachers did not receive a copy of his 504 Plan.  (*Id.* at ¶¶ 22-25.)  Despite Ryan's subsequent assignment to the achievement center, in December 2009 and again in March 2010, Ryan's guidance counselor reported to Ms. Batchelor that Ryan was failing his classes.  (*Id.* at ¶ 27.)

On March 15, 2010, Ms. Batchelor met with Vice Principal Harrison to discuss Ryan's struggles, and informed him that the District was not providing Ryan with the support services required by the 504 Plan.  (*Id.* at ¶ 28.)  Appellants allege that Mr. Harrison was hostile and offensive during the meeting, and, at its conclusion, Ms. Batchelor informed Mr. Harrison she would be contacting an attorney.  (*Id.*)

The next month, in April 2010, Ms. Batchelor and her attorney met with District representatives to discuss the District's failure to implement Ryan's 504 Plan.  (*Id.* at ¶ 36.)  After this meeting, the District assigned Ryan to a resource room, provided tutoring, and, in an effort to better identify the nature of Ryan's learning disability, administered additional testing and evaluations.  (*Id.* at ¶ 37.)  Following testing, which evidenced that Ryan had an additional math disability, an Individualized Education Plan ("IEP") meeting was held

---

[3] The parties did not provide the Court with a copy of Ryan's 504 Plan.

5

with the District and Ms. Batchelor, and subsequently, the District developed an IEP for Ryan.[4] (*Id.* at ¶ 38.)

As a result of the April 2010 meeting, the District offered Appellants a settlement whereby Ms. Batchelor would waive all claims under the IDEA, Section 504, and the ADA, and the District would provide compensatory education services to Ryan. (*Id.* at ¶ 39.) Specifically, the settlement agreement (the "Settlement Agreement") required the District to "establish a[] fund for compensatory education consisting of one hundred sixty hours of tutoring . . . ." Defs.' Mem. of Law in Opp'n to Pls.' Mot. for a TRO and Imposition of a Prelim. Inj. Ex. 3, *Ryan Batchelor, et al. v. Rose Tree Media School District, et al.*, Case No. 2:11-cv-06733-CDJ (E.D. Pa. Nov. 9, 2011), ECF No. 6-3. The Settlement Agreement became effective at the beginning of Ryan's junior year, on September 24, 2010. (Compl. ¶¶ 39-40.)

## 2. *Ryan's Junior Year (2010-2011)*

The District failed to reimburse Ms. Batchelor for the costs of private tutoring incurred between January and April

---

[4] The parties also did not provide the Court with a copy of Ryan's IEP. We relay the limited information concerning its contents provided in the Complaint. We presume that Ryan became IEP eligible upon being diagnosed with a math disability because Section 504 defines disability more broadly than the IDEA, and thus, some students covered by Section 504 are not covered under the IDEA. *Compare* 20 U.S.C. § 1401(3) *with* 42 U.S.C. § 12102(1) (incorporated by reference in 29 U.S.C. § 705(9)(B)).

2011, despite its obligations to do so under the Settlement Agreement. Consequently, Ms. Batchelor filed a breach of contract action, which resulted in the District partially reimbursing her for the tutoring costs. Nevertheless, the District refused to reimburse Ms. Batchelor for the cost of tutoring services incurred thereafter. (*Id.* at ¶ 62.)

Appellants allege that, in addition to failing to implement the Settlement Agreement, during Ryan's junior year the District engaged in retaliatory acts against them. (*Id.* at ¶¶ 42-50). For example, Appellants allege that, in an act of retaliation, the District changed Ryan's math tutor from a teacher he had worked well with to a tutor who was sarcastic, impatient, and mean, causing Ryan to "feel badly about himself." (*Id.* at ¶ 43.) In another example of retaliation, Appellants allege that the District assigned Ryan to a teacher whom they knew Ryan considered to be a bully. Indeed, on Ryan's first day of class, he was wrongly disciplined and humiliated. (*Id.* at ¶ 57.)

### 3. *Ryan's Senior Year (2011-2012)*

Due to the District's failure to implement the terms of the Settlement Agreement and Ryan's IEP, as well as the continuing acts of bullying and retaliation Ryan and Ms. Batchelor suffered, Ryan withdrew from Penncrest for his senior year and enrolled in Twenty First Century Cyber Charter School. (*Id.* at ¶ 66.) In another act of alleged retaliation, the District refused to allow Ryan to participate in Penncrest's choir and dance teams during his senior year even though he remained a District resident. (*Id.* at ¶ 67.)

7

Appellants allege that, collectively, the District's retaliatory actions were severely detrimental to Ryan's educational achievement and health.

## B.    Procedural History

On October 27, 2011, Appellants filed the Initial Complaint, and on March 5, 2012, filed the Complaint at issue here.  In the Complaint, Appellants make three federal claims: (1) retaliation/failure to provide a free appropriate public education ("FAPE") in violation of the IDEA, 20 U.S.C. § 1401(9) (Count II, *Appellants v. District*); (2) retaliation in violation of Section 504 of the Rehabilitation Act, 29 U.S.C. § 794(a) (Count III, *Appellants v. District*); and (3) retaliation in violation of the ADA, 42 U.S.C. § 12203 (Count IV, *Appellants v. District & Individual Appellees*).[5] Appellants seek compensatory damages, statutory damages, reasonable attorney's fees, and  "such other further relief as this court deems just and appropriate."  (Compl. ¶¶ 82, 92, 101.)

Appellees filed a motion to dismiss, which Judge Sitarski granted pursuant to Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction, on the ground that Appellants

---

[5]Appellants initially included claims for discrimination as part of Counts II, III, and IV, but those claims were voluntarily dismissed.  (App. 138a.)    Additionally, the Complaint contained three state law claims (Counts I, V, and VI), but Magistrate Judge Lynne A. Sitarski dismissed those claims by declining to exercise supplemental jurisdiction.  (Pls.' Opp'n Mot. Dismiss at 2; App. 138a.)  The dismissal of these state law claims is not before us on appeal.

failed to exhaust their administrative remedies under the IDEA. *See* Magistrate Judge Sitarski's Report & Recommendation, *Batchelor v. Rose Tree Media School Dist.*, 11-cv-6733, 2012 WL 7990542, at \*3 (E.D. Pa. Oct. 2, 2012) (*hereinafter* R&R). Judge C. Darnell Jones, II of the United States District Court for the Eastern District of Pennsylvania adopted Judge Sitarski's Report and Recommendation.

On appeal, Appellants argue that the District Court erred in concluding that their claims are subject to the IDEA's exhaustion requirement. (Appellants' Br. 10.) Alternatively, Appellants argue that their claims are exempt from the IDEA's exhaustion requirement because: (1) they seek only monetary damages, which are unavailable under the IDEA (*id.* at 13-15); (2) the implementation exception applies (*id.* at 15-19); and/or (3) the futility exception applies. (*Id.* at 19-20.)

## II. <u>JURISDICTION & STANDARD OF REVIEW</u>

The District Court had jurisdiction over Appellants' IDEA claims under 28 U.S.C. § 1331. We have appellate jurisdiction over an appeal from a dismissal for lack of subject matter jurisdiction under 28 U.S.C. § 1291.

We exercise plenary review over a district court's order dismissing a complaint for lack of subject matter jurisdiction. *Taliaferro*, 458 F.3d at 188. Because Appellees made a facial challenge to the District Court's subject matter jurisdiction under Rule 12(b)(1), that is, they contested the sufficiency of the pleadings, "we review only whether the allegations on the face of the complaint, taken as true, allege

9

facts sufficient to invoke the jurisdiction of the district court." *Id.* (internal quotation marks omitted).[6]

## III. ANALYSIS

### A.     The IDEA Statutory Scheme

The purpose of the IDEA is to "ensure that all children with disabilities have available to them a free appropriate public education that emphasizes special education and related services designed to meet their unique needs . . . ." 20 U.S.C. § 1400(d)(1)(A).  Under the IDEA, a state is eligible for federal funding if it complies with several requirements, all aimed at protecting the rights of students with disabilities and their parents.  The main requirement is that states make available a FAPE to children with disabilities.  *Id.* § 1412(a)(1).[7]  States must comply with detailed procedures for

---

[6] Judge Sitarski determined, and the parties do not disagree, that Appellees made a facial attack on subject matter jurisdiction. (R&R at *3.)

[7] The state administers a FAPE by developing an IEP for every child with disabilities.  20 U.S.C. § 1414(d); *see also Bd. of Educ. of Hendrick Hudson Cent. Sch. Dist. v. Rowley*, 458 U.S. 176, 181-82 (1982).  Although the IDEA does not set forth definite guidelines for the formulation of an IEP, *Rowley*, 458 U.S. at 189, at a minimum, "[t]he IEP must be reasonably calculated to enable the child to receive meaningful educational benefits in light of the student's intellectual potential." *Shore Reg'l High Sch. Bd. of Educ. v. P.S.*, 381 F.3d 194, 198 (3d Cir. 2004) (internal quotation marks and citation omitted).

identifying, evaluating, and making placements for students with disabilities, as well as procedures for developing IEPs. They must also implement specified procedural safeguards to ensure children with disabilities and their parents are provided with due process. These safeguards, known collectively as the IDEA's administrative process, provide parents with an avenue to file a complaint and to participate in an impartial due process hearing with respect to "any matter relating to the identification, evaluation, or educational placement of the[ir] child, or the provision of a free appropriate public education to such child . . . ." *Id.* § 1415(b)(6)(A); *see also id.* § 1415(f)(1)(A) (parents who have filed a complaint "shall have an opportunity for an impartial due process hearing . . . ." ). The IDEA's administrative process is conducted in compliance with state procedures. 20 U.S.C. § 1415(f)(1)(A).[8]

Following completion of the IDEA's administrative process, i.e., exhaustion, the IDEA affords "[a]ny party aggrieved by the findings and decisions" made during or pursuant to the impartial due process hearing an opportunity for judicial review. 20 U.S.C. § 1415(i)(2)(A); *Komninos v. Upper Saddle River Bd. of Educ.*, 13 F.3d 775, 778 (3d Cir.

Note that the *Rowley* decision refers to the Education of the Handicapped Act. 458 U.S. at 188. Congress changed the name of the statute to the Individuals with Disabilities Education Act ("IDEA") in 1990. *See* Pub.L. No. 101-476, 104 Stat. 1141 (1990). To avoid confusion, we refer to the statute throughout this opinion as the IDEA.

[8] In Pennsylvania, an impartial hearing officer presides over the due process hearing. *See* 22 Pa. Code § 14.162(f).

11

1994). In the normal case, exhausting the IDEA's administrative process is required in order for the statute to "grant[] subject matter jurisdiction to the district court[]." *Komninos*, 13 F.3d at 778 ("[I]t is clear from the language of the Act that Congress intended plaintiffs to complete the administrative process before resorting to federal court."); *see also* 20 U.S.C. § 1415(i)(3)(A). After examining the administrative record and hearing additional evidence at the request of either party, the reviewing court is authorized to grant "such relief as [it] determines is appropriate" based on the preponderance of the evidence. 20 U.S.C. § 1415(i)(2)(C)(i)-(iii). These remedies include, *inter alia*, "attorneys' fees, reimbursement for a private educational placement, and compensatory education." *Chambers v. Sch. Dist. of Phila. Bd. of Educ.*, 587 F.3d 176, 185 (3d Cir. 2009) (internal quotation marks omitted).

Exhaustion of the IDEA's administrative process is also required in non-IDEA actions where the plaintiff seeks relief that can be obtained under the IDEA. Congress provided an express "[r]ule of construction" in section 1415(l), which states:

> [n]othing in this chapter shall be construed to restrict or limit the rights, procedures, and remedies available under the Constitution, the Americans with Disabilities Act of 1990 [42 U.S.C. § 12101-12213], title V of the Rehabilitation Act of 1973 [29 U.S.C. § 791-794f], or other Federal laws protecting the rights of children with disabilities, except that before the filing of a civil action under such laws seeking relief that is also available under

12

> this subchapter, the [IDEA administrative process] shall be exhausted to the same extent as would be required had the action been brought under this subchapter.

20 U.S.C. § 1415(l). "This provision bars plaintiffs from circumventing [the] IDEA's exhaustion requirement by taking claims that could have been brought under IDEA and repackaging them as claims under some other statute—*e.g.*, section 1983, section 504 of the Rehabilitation Act, or the ADA." *Jeremy H. v. Mount Lebanon Sch. Dist.*, 95 F.3d 272, 281 (3d Cir. 1996) (finding plaintiffs properly exhausted ADA and Section 504 Act claims by participating in an IDEA due process hearing). Thus, determining if the IDEA's administrative process must be exhausted before bringing claims in federal court turns on whether the parties could have asserted the claims under the IDEA. Intertwined with this inquiry is whether the claim could have been remedied by the IDEA's administrative process. This means that, absent the application of any exceptions, all of Appellants' claims made pursuant to the IDEA require exhaustion, as do any claims asserted under Section 504 and the ADA, if they seek relief that is available under the IDEA.[9] As set forth below,

---

[9] Appellants concede, and the record confirms, that they did not exhaust IDEA administrative remedies before filing the Complaint at issue here. (Appellants' Br. 6) ("[P]laintiffs have not exhausted their administrative remedies . . . .'") (quoting App. 43a).) Appellants do not assert they have filed a complaint pursuant to Section 1415(b), or participated in an impartial due process hearing under Section 1415(f). Thus, they do not come before this Court as an "aggrieved" party. 20 U.S.C. § 1415(i).

13

all of Appellants' claims require exhaustion of the IDEA's administrative process, and thus, the District Court did not err in dismissing them. Appellants' failure to exhaust administrative remedies forestalled the District Court from properly asserting subject matter jurisdiction over the federal claims.

## B. Applicability of the IDEA's Exhaustion Requirement

At the outset, we reject Appellants' argument that "this action is exempt from the requirement to exhaust administrative remedies pursuant to the IDEA" because "[t]he issues presented . . . are not educational issues[;] [r]ather they are issues of civil rights resulting from Defendants' retaliatory conduct." (Appellants' Br. 6, 10-13.) To review, Count II asserts "retaliation/failure to provide [a] FAPE in violation of [the] IDEA[.]" (Compl. ¶¶ 73-82.) Count III asserts "retaliation in violation of Section 504". (*Id.* at ¶¶ 83-92.) Last, Count IV asserts "retaliation in violation of the ADA". (*Id.* at ¶¶ 93- 101.) We address each of these claims in turn.

Count II of the Complaint squarely falls within those claims subject to the IDEA's exhaustion requirement. *See* 20 U.S.C. § 1415(i). Indeed, Count II asserts a claim against the District under the stricture of the IDEA itself. (Compl. ¶¶ 73-82.) Moreover, Appellants assert that as a result of the District's failure to provide Ryan with a FAPE and to implement Ryan's IEP, as is required under the IDEA, "Ryan has suffered and continues to suffer great harm to his level of educational achievement and personal well being." (*Id.* at ¶ 81.) It is plain that Count II falls within the ambit of § 1415(i) and requires exhaustion: Appellants claim that the

14

IDEA has been violated, they allege educational harms, and the IDEA's statutory scheme is able to provide an appropriate remedy.

It is less clear however, if exhaustion is required for Counts III & IV of the Complaint, which allege retaliation in violation of Section 504 of the Rehabilitation Act and the ADA. (Compl. ¶¶ 83-92, 93-101.) We must decide, as a matter of first impression, whether a claim that a school district retaliated against a child and/or the child's parents for enforcing the child's rights under the IDEA could be brought under, and remedied by, the IDEA. Appellants urge that it cannot.[10] We disagree. Appellants' retaliation claims are related to the provision of FAPE under 20 U.S.C. § 1415(b)(6) and, as such, must be exhausted.

The question at hand requires statutory interpretation in the first instance. "Our goal when interpreting a statute is to effectuate Congress's intent. Because we presume that Congress's intent is most clearly expressed in the text of the statute, we begin our analysis with an examination of the plain language of the relevant provision." *Hagans v. Comm'r of Soc. Sec.*, 694 F.3d 287, 295 (3d Cir. 2012) (citation and internal quotation marks omitted). The IDEA affords parents of a disabled child the opportunity to present a complaint

---

[10] Under Appellants' approach, parties would be exempt from exhaustion if they plead retaliation claims. Such a holding would significantly lower the threshold to bring a claim in court. This would be a radical departure from current practice.

"with respect to *any* matter *relating* to the identification, evaluation, or educational placement of the child, or the provision of a free appropriate public education to such child . . . ." 20 U.S.C. § 1415(b)(6)(A) (emphasis added).

Focusing on the claims asserted here, it is plain that Appellants' retaliation claims palpably "relate" to the District's provision of a FAPE to Ryan. Specifically, Appellants contend that the District retaliated against Ms. Batchelor and Ryan "for their advocacy with respect to Ryan's legally protected rights[.]" (Compl. ¶ 89.) They allege that the District, *inter alia*, bullied, intimidated, and further harassed Ms. Batchelor at meetings regarding Ryan's progress (*id.* at ¶¶ 28-29, 89), failed to timely reimburse Ms. Batchelor for the cost of private tutors (*id.*), replaced a tutor with whom Ryan worked well, with another, presumably less effective tutor (*id.* at ¶ 89), refused to implement the terms of Ryan's IEP (*id.* at ¶¶ 80, 89), placed Ryan in a class taught by Mr. Doyle, a teacher Ryan identified as being a bully (*id.* at ¶¶ 46-49, 89), and refused to permit Ryan to participate in extracurricular activities during his senior year while enrolled in a charter school. (*Id.* at ¶¶ 66-67, 89.) Among other injuries, Appellants allege the District's conduct deprived Ryan of a FAPE and caused "great harm to his level of educational achievement and personal well being." (*Id.* at ¶¶ 81, 92, 101.) In accord with two of our sister circuits who require IDEA exhaustion of retaliation claims, we conclude that Appellants' retaliation claims asserted under Section 504 of the Rehabilitation Act and ADA "relate unmistakably" to the provision of a FAPE to Ryan, and are thus subject to the IDEA's exhaustion requirement. *Rose v. Yeaw*, 214 F.3d 206, 210 (1st Cir. 2000) (finding that retaliation claims "relate unmistakably to the evaluation and educational placement of

[a student], . . . and to the provision of a free appropriate education . . . ."); *see also M.T.V. v. DeKalb Cnty. Sch. Dist.*, 446 F.3d 1153, 1158-59 (11th Cir. 2006) ("[R]etaliation claims clearly relate to [the disabled student's] evaluation and education, and, therefore, are subject to the [IDEA's] exhaustion requirement.").

In *M.T.V. v. DeKalb County School District*, the Eleventh Circuit found claims of retaliation to be "related" to the disabled student's evaluation and education, so as to require IDEA exhaustion, where "the [s]chool [d]istrict harassed the student's parents at IEP meetings, wrote them intimidating letters in response to their educational demands, and subjected the student to needless and intrusive testing." 446 F.3d at 1158-59. Similarly, the First Circuit held in *Rose v. Yeaw*, that a claim of a school district's retaliation "against [a student] in response to the [parents'] efforts to enforce his educational rights . . . relate[s] unmistakably to the evaluation and educational placement of [the student], . . . and to the provision of a free appropriate education . . . ." 214 F.3d at 210.

We are satisfied that the plain language of the IDEA required exhaustion here, as there is a logical path to be drawn from the Appellants' claims of retaliation to the District's failure to provide, and Ms. Batchelor's effort to obtain for, Ryan "a free appropriate public education". 20 U.S.C. § 1415(b)(6)(A); *see also Park 'N Fly, Inc. v. Dollar Park & Fly, Inc.*, 469 U.S. 189, 194 (1985) ("[T]he ordinary meaning of that language accurately expresses the legislative purpose . . . .").

Besides the mandates of statutory interpretation, there is a strong policy reason requiring exhaustion of remedies available under the IDEA. *Komninos*, 13 F.3d at 778. Exhaustion serves the purpose of developing the record for review on appeal, *S.H. v. State-Operated Sch. Dist. of City of Newark*, 336 F.3d 260, 269-70 (3d Cir. 2003) (discussing the importance of fact-finding in IDEA cases), encouraging parents and the local school district to work together to formulate an IEP for a child's education, *Komninos*, 13 F.3d at 778, and allowing the education agencies to apply their expertise and correct their own errors. *Cf. McKart v. United States*, 395 U.S. 185, 193 (1969) (explaining the doctrine of exhaustion of administrative remedies, and noting its application "to specific cases requires an understanding of [the statute's] purpose[] and of the particular administrative scheme involved"); *see also Polera v. Bd. of Educ. of the Newburgh Enlarged City Sch. Dist.*, 288 F.3d 478, 487 (2d Cir. 2002) ("The IDEA's exhaustion requirement was intended to channel disputes related to the education of disabled children into an administrative process that could apply administrators' expertise in the area and promptly resolve grievances.") Indeed we have previously recognized that:

> [t]he advantages of awaiting completion of the administrative hearings are particularly weighty in Disabilities Education Act cases. That process offers an opportunity for state and local agencies to exercise discretion and expertise in fields in which they have substantial experience. These proceedings thus carry out congressional intent and provide a means to develop a complete factual record. *Smith v.*

*Robinson*, 468 U.S. [992, 1011 (1984)] (Congress made express efforts to place primary responsibility for fulfilling the needs of handicapped children on local and state education agencies). The administrative hearings generally will produce facts and opinions relevant to the very same issues presented to the court by plaintiffs.

*Komninos*, 13 F.3d at 779. These policy concerns weigh heavily in favor of requiring exhaustion, even where the complaint contains claims of retaliation. Considering the parties' failure to provide even the most basic of documentation in support of their positions, i.e., Ryan's 504 Plan and IEP, exhaustion will be particularly helpful in developing a factual record.

Given the plain language and structure of the IDEA, in addition to the purpose of the IDEA's exhaustion requirement and the policy concerns supporting it, we now hold that retaliation claims related to the enforcement of rights under the IDEA must be exhausted before a court may assert subject matter jurisdiction.[11]

---

[11] It is also notable that special education hearing officers in Pennsylvania have addressed retaliation claims under the Rehabilitation Act in the past. *See Pennsylvania Special Education Hearing Officer Decision*, Case No. 9629/08-09 (Nov. 10, 2009), at 21, *available at* http://204.186.159.23/odr/HearingOfficerDecisions/9629-08-09.pdf. Moreover, a guidebook for parents issued by the Pennsylvania Office for Dispute Resolution notes that, in addition to IDEA claims, due process hearings regularly

## C. Exceptions to the IDEA's Exhaustion Requirement

Appellants argue that even if the Court finds that their claims fall within the scope of the IDEA's exhaustion requirement, those claims are exempt because: (1) they seek only monetary damages, which are unavailable under the IDEA (Appellants' Br. 13-15); (2) the implementation exception applies (*id.* at 15-19); and/or (3) the futility exception applies. (*Id.* at 19-20.) These arguments all fail.

### 1. Monetary Damages not Available Under the IDEA

Appellants argue that their claims are exempt from the IDEA's exhaustion requirement because the remedies they seek are unavailable under the IDEA. (Appellants' Br. 13.) While such an exception does exist generally, *Komninos*, 13 F.3d at 778, it is inapplicable in the instant case.

Appellants seek compensatory and punitive damages, which, as they correctly point out, "are not available under the IDEA and cannot be awarded in the context of a Due Process hearing." (Appellant Br. 14) (citing *Chambers*, 587 F.3d at 186). This is not dispositive, however, for several reasons.

First, Appellants do not exclusively seek compensatory and punitive damages. Indeed, despite Appellants' assertion

---

address claims made under Section 504 of the Rehabilitation Act. *Understanding Special Education Due Process Hearings: A Guide For Parents,* Pennsylvania Office for Dispute Resolution (2012), at 28, *available at* http://odr-pa.org/2012-parent-guide/.

on appeal that "[t]he only remedy sought . . . is the payment of monetary damages" (Appellants' Br. 14), the Complaint requests, in addition to compensatory damages and punitive damages, statutory damages, reasonable attorney's fees, and "such other further relief as this court deems just and appropriate". (Compl. ¶¶ 82, 92, 101.) Thus, it is untenable for Appellants to maintain that *all* of the remedies they seek are unavailable under the IDEA.

Second, in reviewing Appellants' IDEA-related claims, the District Court is not constrained in the relief it is authorized to grant by the remedies sought in the Appellants' Complaint. On the contrary, the nature of Appellants' claims and the governing law determine the relief, regardless of Appellants' demands. *See* Fed. R. Civ. P. 54(c) ("Every other final judgment should grant the relief to which each party is entitled, even if the party has not demanded that relief in its pleadings."). Applying this to § 1415(f), "the theory behind the grievance may activate the IDEA's process, even if the plaintiff wants a form of relief that the IDEA does not supply." *Charlie F. v. Bd. of Educ. of Skokie Sch. Dist. 68*, 98 F.3d 989, 992 (7th Cir. 1996).

In *Charlie F. v. Board of Education of Skokie School District 68*, plaintiff sued for monetary damages under the ADA, Section 504, 42 U.S.C. § 1983, and state tort law. *Id.* Although plaintiff did not bring claims directly under the IDEA, the Seventh Circuit still required exhaustion of the IDEA's administrative process. *Id.* at 991-93. The court emphasized that parents "cannot ignore remedies available under the IDEA and insist on those of their own devising; under the IDEA, educational professionals are supposed to have at least the first crack at formulating a plan to overcome the consequences of educational shortfalls." *Id.* at 992.

21

Under similar circumstances, the Second Circuit came to the same result. *See Polera*, 288 F.3d at 478, 488 (requiring exhaustion of the IDEA's administrative process even though plaintiffs did not bring an IDEA claim and only sought monetary damages). The Second and Seventh Circuits' reasoning for requiring exhaustion of the IDEA's administrative process applies with even more force in the instant case, as Appellants asserted claims directly under the IDEA.

Rather than being constrained by the remedies sought in the Appellants' Complaint, the IDEA authorizes the District Court to grant Appellants "such relief as [it] determines is appropriate". 20 U.S.C. § 1415(i)(2)(C)(iii). *See also A.W. v. Jersey City Pub. Schs.*, 486 F.3d 791, 802 (3d Cir. 2007) (en banc).[12] As we noted in *D.F. v. Collingwood Borough Board of Education*,

---

[12] Relief under Section 1415(i)(2)(C)(iii) is "appropriate" if it furthers the purpose of the IDEA. *Sch. Comm. of Burlington v. Dep't of Educ.*, 471 U.S. 359, 369 (1985). We have interpreted this provision "broad[ly]" to include attorneys' fees, reimbursement for a private educational placement, and compensatory education. *Chambers*, 587 F.3d at 185 (collecting cases). *See e.g.*, *Forest Grove Sch. Dist. v. T.A.*, 557 U.S. 230, 246 (2009) (reimbursement for private school tuition); *Collingswood*, 694 F.3d at 499 (suggesting the school district could contract with a local provider to provide tutoring, counseling, or other support services); *Ferren C.*, 612 F.3d at 712 (creation of compensatory education fund); *Shore Reg'l*, 381 F.3d at 198 (payment for out-of-district tuition and related costs, including the student's reasonable attorneys' fees); *Bucks Cnty. Dep't of Mental Health/Mental*

> [a]ppropriate remedies under the IDEA are determined on a case-by-case basis. "In each case, a court will evaluate the specific type of relief that is appropriate to ensure that a student is fully compensated for a school district's past violations of his or her rights under the IDEA and develop an appropriate equitable award."

694 F.3d 488, 498-99 (3d Cir. 2012) (quoting *Ferren C. v. Sch. Dist. of Phila.*, 612 F.3d 712, 720 (3d Cir. 2010)). Thus, despite their plea to the contrary, the remedies that Appellants seek do not dictate the applicability of the IDEA to their claims.

Third, even though a monetary award is not available to Appellants during the IDEA administrative process as compensatory and punitive damages,[13] such an award may nevertheless be granted as reimbursement for certain expenses incurred. Indeed, "Congress meant to include

---

*Retardation v. Pennsylvania*, 379 F.3d 61, 69 (3d Cir. 2004) (reimbursement to parent for the time she personally spent working with her disabled daughter, even though parent had no actual out-of-pocket expenses).

[13] As per our holding in *Chambers*, Appellants' request for compensatory damages on their IDEA claims fail, irrespective of exhaustion, as such damages are unavailable. 587 F.3d at 186. In *Chambers*, we stressed that "Congress intended to ensure that disabled children receive a FAPE under appropriate circumstances, not to create a mechanism for compensating disabled children and their families . . . where a FAPE is not provided." *Id.*

retroactive reimbursement to parents as an available remedy in a proper case." *Sch. Comm. of Burlington*, 471 U.S. at 370. For instance, if parents have paid for a disabled child's education because the public schools were failing to provide a FAPE, the reimbursement of such expenses constitutes appropriate relief under the IDEA. *Forest Grove Sch. Dist.*, 557 U.S. at 246; *Sch. Comm. of Burlington*, 471 U.S. at 370; *Lester H. v. Gilhool*, 916 F.2d 865, 869-70 (3d Cir. 1990). This reasoning applies with equal force with respect to reimbursement for inadequate tutoring services. *See D.F.*, 694 F.3d at 498-99 (compensatory education can take the form of summer school and tutoring). *Accord Adams v. State of Oregon*, 195 F.3d 1141, 1150-51 (9th Cir. 1999) (parents are entitled to reimbursement for appropriate private tutoring).

Appellants' argument that their action "does not present any issue within the scope of § 1415(b)(6)" is further undermined by their claims that as a result of the District's bad behavior, which included its failure to provide Ryan with a FAPE, "Ryan has suffered great harm to his educational achievement . . . ." (Compl. ¶¶ 92, 101.) It is clear that "[b]oth the genesis and the manifestations of the problem[s] are educational . . . ." *Charlie F.*, 98 F.3d at 993. The "IDEA offers comprehensive educational solutions . . ." to directly address educational harms,[14] *id.*, and, in addition, provides

---

[14] Here, compensatory education is available even though Ryan has since graduated from high school. *Ferren C.*, 612 F.3d at 717. Under the IDEA, a school district's obligation to provide a FAPE terminates when the child reaches the age of twenty-one. 20 U.S.C. § 1412(a)(1)(A); *Ferren C.*, 612 F.3d at 717. In appropriate cases however, relief under the IDEA

reimbursement for certain financial losses that occur as a result of the educational harms. *See Ferren C.*, 612 F.3d at 712 (compensatory education); *Bucks Cnty. Dep't of Mental Health/Mental Retardation*, 279 F.3d at 69 (financial reimbursement). Thus, the District Court correctly concluded that despite being unable to award compensatory damages, if Appellants had prevailed at the due process hearing, the special education hearing officer would have been able to provide them with appropriate relief.[15]

---

may be awarded beyond a student's twenty-first birthday. *Ferren C.*, 612 F.3d at 717 (awarding non-monetary award of compensatory education to twenty-four year old student). Here, Ryan's age is unknown, and relief may still be available to him under the IDEA. As is alleged in the Complaint itself, Ryan "continues to suffer great harm to his level of educational achievement," and thus compensatory education may be an appropriate remedy. (Compl. ¶¶ 81, 92, 101.)

[15] This is not to say that Appellants will not be entitled to compensatory damages for their retaliation claims *after* they exhaust the IDEA administrative process. As Appellees' counsel recognized at oral argument, after the administrative hearing officer issues a decision, the IDEA authorizes "any party aggrieved by the findings and decision" to appeal to a federal district court. *See* 20 U.S.C. § 1415(i). In such an action, the court reviews the records of the administrative proceedings, hears additional evidence at the request of a party, and grants such relief as may be appropriate. 20 U.S.C. § 1415(i)(2)(C); *see also Komninos*, 13 F.3d at 778. At that point, so long as the aggrieved party has exhausted the IDEA's administrative process, they may seek relief, such as compensatory damages, that is not otherwise available during

Holding that Appellants must exhaust the IDEA's administrative process before seeking judicial relief ensures that the purpose of the IDEA remains intact. In response to a school district's alleged bad behavior, the educational harms suffered by children with disabilities will be addressed first and foremost during the IDEA's administrative process. Once these educational deficiencies have been addressed, victims may seek further remedy in court pursuant to statutory schemes allowing for compensatory and punitive damages, such as Section 504 and the ADA provide.

## 2. *Implementation Exception to the IDEA Exhaustion Requirement*

Appellants also argue that their claims are exempt from the IDEA's exhaustion requirement because an implementation exception applies. (Appellants' Br. 15-19.) According to Appellants, the exception applies where the parties challenge only the implementation of a student's IEP and not its adequacy or content. (*Id.* at 16.)

There is no binding appellate precedent requiring this Court to recognize the implementation exception. Instead, Appellants urge us to consider two cases from the Ninth and Second Circuits, as well as six district court cases from

the administrative proceeding. This means that, after exhaustion, Appellants may very well file a complaint containing virtually identical claims as asserted in the Complaint before us today.

26

Pennsylvania. (*Id.* at 15-19; *see also* Appellant Reply 1-4.) These cases are inapposite.

The Ninth Circuit held in *Porter v. Board of Trustees of Manhattan Beach Unified School District*, 307 F.3d 1064, 1071 (9th Cir. 2002), that since the parents exhausted the IDEA's administrative process and obtained an order for a compensatory education program for their child, they were not required to again exhaust the IDEA's administrative process or to comply with the state's complaint resolution procedure[16] before they could sue in federal court for failure

---

[16] As the Seventh Circuit explained:

> Distinct from the IDEA's due process requirements, the U.S. Department of Education promulgated regulations pursuant to its general rulemaking authority requiring each recipient of federal funds, including funds provided through the IDEA, to put in place a complaint resolution procedure ("CRP"). 34 C.F.R. §§ 300.660-300.662 (citing 20 U.S.C. § 1221e-3 as authority for rules); *Lucht v. Molalla River Sch. Dist.,* 225 F.3d 1023, 1029 (9th Cir. 2000). The regulations require each state education agency to adopt written procedures for "[r]esolving any complaint" regarding the education of a child with a disability. 34 C.F.R. § 300.660(a). . . . The regulations do not, however, state that a parent must exhaust the CRP to enforce a due process decision in court.

*Porter*, 307 F.3d at 1067; *accord Jeremy H.*, 95 F.3d at 281.

to implement the program. *Id.* The facts of *Porter* are materially different from the case at hand, as Appellants here have not invoked the IDEA's administrative process in the past. Moreover, although the parties entered into the binding Settlement Agreement, as a threshold matter that is not a final decision issued by a hearing officer that they can argue the District failed to implement. *See* 20 U.S.C. 1415(i)(1)(A) ("A decision made in a [due process hearing] . . . shall be final . . . ."); *id.* § 1415(i)(2) ("Any party aggrieved by the *findings and decision* made under this subsection . . . shall have the right to bring a civil action with respect to the complaint presented pursuant to this section . . . .") (emphasis added).

In dicta, the Second Circuit has also acknowledged an implementation exception where the only issue presented is that "a school [] failed to implement services that were specified or otherwise clearly stated in an IEP". *Polera*, 288 F.3d at 489.[17] Ultimately, however, the *Polera* court declined

---

[17] In recognizing this exception, the court relied on the following statement of Senator Paul Simon, a co-sponsor of two of the acts that formed the foundation of the IDEA:

> "It is important to note that there are certain situations in which it is not appropriate to require the exhaustion of [IDEA] administrative remedies before filing a civil law suit. These include complaints that . . . an agency has failed to provide services specified in the child's individualized educational program."

*Id.* at 489 (quoting 131 Cong. Rec. § 10396-01 (1985)).

28

from applying the exception because implementation of the IEP was not the only issue presented. *Id.* at 489. To the contrary, the IEPs at issue "did not clearly state the obligations of the school", and instead, their terms required the court's interpretation. *Id.*[18] As an initial matter, looking at the record before us, it is impossible to adopt this exception as the parties have not appended a copy of Ryan's IEP. Therefore, we do not know if Appellants' claims "encompass[] both a failure to provide services and a significant underlying failure to specify what services were to be provided". *Id.* However, even if Appellants had provided Ryan's IEP, we would not have occasion to adopt this exception because the implementation of the IEP is not the sole issue in dispute. Rather, unlike the plaintiffs in *Polera*, Appellants here make substantive claims under the IDEA for failure to provide a FAPE, in addition to claims for

---

[18] Rather, the IEPs in contention:

> include[d] long lists of abstract goals (for example, "will successfully accomplish the required language arts skills necessary to complete the grade 12 curriculum") but [were] virtually silent as to what materials or services the school should provide.

*Id.* The court noted that, "[i]n order to identify those services (for example, to ascertain the content of a 'curriculum'), we are left either to speculation or to reliance on extrinsic evidence . . . ." *Id.*

29

retaliation. In accord, it would be inappropriate to apply an implementation exception in the case at bar.[19]

### *3. Futility Exception to the IDEA Exhaustion Requirement*

Lastly, Appellants attempt to save their claims from dismissal by arguing that the futility exception to the IDEA's exhaustion requirement applies. (Appellants' Br. 19-20.) Their theory is that because "Ms. Batchelor had to sue the District not once but twice to enforce previous awards of compensatory education services, it is clear that a third resort to the IDEA's administrate procedures to obtain further compensatory education would have been an exercise in futility." (*Id.*)

The District's alleged past failure to implement Ryan's Section 504 Plan and IEP is an insufficient basis to excuse the exhaustion requirement. (Appellees' Br. 22.) That said, Appellants' position does have traction in case law. *See Komninos*, 13 F.3d at 778; *W.B. v. Matula*, 67 F.3d 484, 493 (3d Cir. 1995), *abrogated on other grounds by Jersey City Pub. Schs.*, 486 F.3d at 799 (overruling *Matula* insofar as it held that money damages are available in a § 1983 action based on an IDEA violation).

In *Matula*, we employed the futility exception to excuse exhaustion, but notably, in that case, plaintiffs had

---

[19] Appellants also cite to six district court cases from Pennsylvania that excuse exhaustion under an implementation exception, but for the reasons provided in Section C. III, *infra*, they do not persuade us. (Appellants' Reply Br. 2.)

previously participated in hearings in front of an administrative law judge to resolve the student's classification and placement, and, in addition, the factual record was fully developed. 67 F.3d at 496. Under those circumstances, we determined that "an action seeking compensation for the alleged IDEA violations is [] ripe for judicial resolution." *Id*. Also, in *Komninos*, we recognized that the IDEA's legislative history advises that exhaustion is not necessary when "an emergency situation exists (e.g., the failure to take immediate action will adversely affect a child's mental or physical health)." 13 F.3d at 778 (quoting H.R. Rep. No. 99-296, at 7 (1985)).

District courts in this circuit have followed suit, implementing the futility exception where the plaintiff had previously exhausted administrative remedies, and where the factual record was sufficiently developed. The district courts have also expanded this rule to situations where the plaintiff sought remedies unavailable under the IDEA, and where the court was not presented with educational issues to be resolved. *See Derrick F. v. Red Lion Area Sch. Dist.*, 586 F. Supp. 2d 282, 295 (M.D. Pa. 2008) (further exhaustion would be futile where plaintiffs previously exhausted the administrative process); *Adam C. v. Scranton Sch. Dist.*, 07-CV-0532, 2008 U.S. Dist. LEXIS 72903, at *6 (M.D. Pa. Sept. 23, 2008) (same); *James S. v. Sch. Dist. of Phila.*, 559 F. Supp. 2d 600, 619 (E.D. Pa. 2008) (exhaustion would be futile where there had been "extensive administrative fact-finding"); *Vicky M. v. Northeastern Educ. Intermediate Unit 19*, 486 F. Supp. 2d 437, 452-53 (M.D. Pa. 2007) (exhaustion would be futile where plaintiffs sought damages for physical abuse and where no other educational issues needed resolution).

The instant case does not present any of the circumstances warranting the application of the futility exception: Appellants have not previously utilized the IDEA administrative process, the factual record is not developed and evidentiary issues are not resolved, the only remaining issue is not a measure of damages, and the IDEA administrative process is in fact able to provide a suitable remedy for the harms alleged.[20] We therefore decline to excuse the exhaustion requirement under the futility exception here.[21]

---

[20] Instead, in the case at hand, the Complaint challenges, *inter alia*, the District's provision of a FAPE to Ryan, the adequacy of tutoring and class instruction provided, and its denial of Ryan's participation in extracurricular activities, (Compl. ¶¶ 52-55, 66), all of which have "an educational source the administrative process may resolve." (App. 20a.)

[21] In *Rose v. Yeaw*, the First Circuit rejected a similar non-cooperation theory to the one asserted by the Appellants here. 214 F.3d at 208-09. In that case, a school district withdrew its request for a due process hearing on two occasions after the child's IEP was amended to provide temporary placement. The First Circuit held that the school district's withdrawal "did not render the administrative process futile" because the "IDEA specifically grants parents the right to unilaterally initiate a due process hearing." *Id.* at 212 (citing 20 U.S.C. § 1415(f)(1)).

District courts in the this Circuit have also declined to apply the futility exception in almost identical factual scenarios. *See e.g.*, *Falzett v. Pocono Mountain School Dist.*, 150 F. Supp. 2d 699, 703 (M.D. Pa. 2001); *M.M. v.*

## IV. **CONCLUSION**

Appellants have not exhausted the IDEA's administrative process and fail to demonstrate that an exception applies. Accordingly, we hold that the District Court was correct in dismissing the Complaint for want of subject matter jurisdiction. For these reasons, we will affirm the District Court's dismissal of Counts II, III, and IV of the Complaint for lack of subject matter jurisdiction under Rule 12(b)(1) of the Federal Rules of Civil Procedure.

---

*Tredyffrin/Easttown Sch. Dist.*, Civ- 06-1966, 2006 WL 2561242, at \*7 (E.D. Pa. 2006). In *M.M. v. Tredyffrin/Easttown Sch. Dist.*, the district court rejected plaintiffs' assertion that resorting to the IDEA administrative process would be futile because they previously participated in one resolution conference and one Section 504 conference, which resulted in "one empty promise after another." 2006 WL 2561242, at \*7. *See also Kuszewski v. Chippewa Valley Schs.*, 51 F. Supp. 2d 812, 815 (E.D. Mich. 1999) (growing animosity between the parties was not sufficient to find that the administrative process would be futile).