Widallys RIVERA–QUIÑONES, A.V.R. (MINOR), Plaintiffs,

v.

DEPARTMENT OF EDUCATION OF PUERTO RICO, Commonwealth of Puerto Rico, Defendants.

Civil No. 15–1184 (FAB).

United States District Court, D. Puerto Rico.

Signed Sept. 1, 2015.

Juan R. Gonzalez–Munoz, Juan C. Nieves–Gonzalez, Gonzalez Munoz Law Offices, P.S.C., San Juan, PR, for Plaintiffs.

Joseph G. Feldstein–Del Valle, Department of Justice Commonwealth Of Puerto Rico, San Juan, PR, for Defendants.

## MEMORANDUM AND ORDER

BESOSA, District Judge.

Before the Court are plaintiffs' motion for reconsideration of the Court's order dismissing plaintiffs' wheelchair access claim, (Docket No. 62), and defendants' motion for an order setting a mediation hearing, (Docket No. 55). For the reasons explained below, the Court **DENIES** both motions.

## I. BACKGROUND

On March 3, 2015, Widallys Rivera–Quiñones ("Ms. Rivera") personally and on behalf of her minor daughter "AVR" (collectively, "plaintiffs") brought suit against the Puerto Rico Department of Education and the Commonwealth of Puerto Rico (collectively, "defendants"). (Docket No. 1.) Plaintiffs' claims are two-fold. First, they allege that defendants' failure to make various school facilities and equipment accessible to AVR, who uses a wheelchair, constitutes a violation of the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400 *et seq.*, and the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12131 *et seq.* Second, plaintiffs claim that defendants' failure to reimburse Ms. Rivera for transportation expenses constitutes a violation of the IDEA.

For their wheelchair access claim, plaintiffs allege the following: (1) there is no wheelchair access to the library at Mariano Feliú Balseiro School ("MFB School"), which AVR attends; (2) the ramps to the second floor and to the bathroom designat-

ed for AVR to use her catheter at MFB School do not have ceilings, making those places inaccessible to AVR when it rains; (3) the cooking equipment in the independent living classroom at MFB School is placed at a height out of AVR's reach, hindering her cooking skills development; and (4) the independent living classroom lacks air conditioning and both AVR's wheelchair and school uniform are black, causing AVR to become warm and to develop urinary infections. *See* Docket No. 1 at ¶¶ 26, 32–34; Docket No. 39–1 at p. 2.

Plaintiffs moved the Court for a preliminary injunction. (Docket No. 2.) Defendants answered the complaint, (Docket No. 29), and moved to dismiss, (Docket No. 28). The Court held a preliminary injunction hearing on April 10, 2015, at which time defendants conceded: (1) that a cost estimate and blueprints had been prepared to build a ramp to the library at MFB School; (2) that the library ramp will be built when funding is approved; (3) that building ceilings on the ramps leading to the second floor and to the area designated for AVR to use her catheter is also included in the same cost estimate; (4) that until· the library ramp is built, a temporary library can be made in AVR's classroom from which both AVR and her classmates will benefit; (5) that some of the cooking equipment in the independent living classroom is out of AVR's reach; (6) that MFB School will allow AVR to wear non-uniform clothing to make her more comfortable in the heat; and (7) that MFB School will add more fans to alleviate the heat in AVR's classroom. (Prelim. Inj. Hr'g Tr. at pp. 2–3, 5, 7, 11–13.)

On May 4, 2015, the Court granted defendants' motion to dismiss without prejudice the wheelchair access claim brought pursuant to the IDEA and the ADA for plaintiffs' failure to exhaust administrative procedures. (Docket No. 52 at pp. 22–23.)

To avoid unjust delay to AVR, despite dismissing the claim, the Court ordered defendants to submit the building project cost estimates that they had acquired and to inform the Court on the status of obtaining funds to execute this project. *Id.* at p. 23.

On May 11, 2015, defendants submitted the cost estimates and moved the Court to set a mediation hearing "to· discuss the possibility of relocating AVR to a school that is better suited to her needs." (Docket No. 55.) Plaintiffs opposed the motion to set a mediation hearing. (Docket No. 56.) On June 1, 2015, plaintiffs moved the Court to reconsider its dismissal of plaintiffs' wheelchair access claim. (Docket No. 62.)

## II. WHEELCHAIR ACCESS CLAIM BROUGHT PURSUANT TO THE IDEA

■ The Court dismissed without prejudice plaintiffs' IDEA's wheelchair access claim, reasoning that plaintiffs' failure to exhaust administrative procedures deprived the Court of subject matter jurisdiction and that neither the futility exception nor the "severe or irreparable harm" exception applied. (Docket No. 52 at pp. 6–7.) Plaintiffs argue that the Court erred when it found the severe or irreparable harm exception inapplicable because the finding was based on an absence of evidence, which is improper at the motion to dismiss stage. (Docket No. 62 at pp. 4–5.)

■ If pursuing administrative remedies would "work severe or irreparable harm" on the student, plaintiffs may bypass the IDEA's administrative procedures and come directly to federal court. *Pihl v. Mass. Dept. of·Educ.,* 9 F.3d 184, 190 (1st Cir.1993). This exception applies in "an emergency situation" where "the failure to take immediate action will adversely affect a child's mental or physical

health." *Rose v. Yeaw*, 214 F.3d 206, 211 (1st Cir.2000) (quoting *Komninos v. Upper Saddle River Bd. of Educ.*, 13 F.3d 775, 778 (3d Cir.1994) (quoting H.R. Rep No. 99–296, at 7 (1985))). The First Circuit Court of Appeals cautions that the exception "is to be sparingly invoked," noting that the Third Circuit Court of Appeals has required plaintiffs to provide "hard evidence that the child faces irreversible damage if the relief is not granted." *Id.* at 212 (quoting *Komninos*, 13 F.3d at 779).

Here, plaintiffs correctly state that they were not required to present evidence at the motion to dismiss stage. By invoking the severe or irreparable harm exception, however, plaintiffs did bear the burden of showing that the exception applied. *See Frazier v. Fairhaven Sch. Comm.*, 276 F.3d 52, 59 (1st Cir.2002). In an effort to carry that burden, plaintiffs argued that denying AVR access to certain school facilities and equipment deprived her of a free appropriate public education ("FAPE"), and that this deprivation constituted irreparable harm. (Docket No. 42 at pp. 4–5.) As the Court explained in its Opinion and Order (Docket No. 52), denial of a FAPE is not the type of harm that satisfies the severe or irreparable harm exception to the exhaustion requirement. If it were, then the exception would swallow the exhaustion requirement because all parents alleging a denial of a FAPE (which is the principal allegation of nearly all IDEA claims) would be able to bypass the IDEA's administrative process and come straight to federal court. This outcome "would subvert not only the very existence of a mandatory exhaustion requirement but also the overall scheme that Congress envisioned for dealing with edu-

cational disabilities." *Frazier*, 276 F.3d at 63.

Because plaintiffs did not allege facts from which the Court could conclude that "an emergency situation" existed that required "immediate action" to prevent "irreversible damage," *see Rose*, 214 F.3d at 211–12 (quoting *Komninos*, 13 F.3d at 778–79), they failed to carry their burden.

Even more, plaintiffs' own actions led the Court to conclude that an emergency situation did not exist. On October 2, 2014, plaintiffs filed an administrative complaint based on two claims: transportation expenses reimbursement and wheelchair access. (Docket No. 50–1 at p. 2.) But plaintiffs moved to dismiss voluntarily without prejudice the wheelchair access claim on November 14, 2014.[1] *Id.* Plaintiffs then waited another four months (until the administrative proceedings for their transportation expenses claim concluded) before seeking relief in federal court on the wheelchair access claim. *See* Docket No. 1. If an "emergency situation" existed, the Court would have expected plaintiffs to come immediately to court upon dismissal of their wheelchair access claim at the administrative proceeding, especially considering that they were represented by the same legal counsel that represents them in this case.

For these reasons, the Court **DENIES** plaintiffs' motion for reconsideration of the dismissal of their wheelchair access claim brought pursuant to the IDEA. Plaintiffs failed to allege facts from which the Court could conclude that the severe or irreparable harm exception to the IDEA's exhaustion requirement applies. Plaintiffs must exhaust administrative procedures on this claim before seeking relief in federal court.

---

1. Plaintiffs explain that they requested dismissal of their wheelchair access claim at the administrative proceeding because the ADA afforded them the same remedy that they sought—injunctive relief. (Docket No. 62 at pp. 2–3.) This rationale puzzles the Court, as it does not explain why plaintiffs wanted to bypass the administrative procedures.

## III. WHEELCHAIR ACCESS CLAIM BROUGHT PURSUANT TO THE ADA

The Court dismissed without prejudice plaintiffs' ADA wheelchair access claim, reasoning that because plaintiffs sought injunctive relief, which is available under the IDEA, section 1415(*l*) of the IDEA required plaintiffs to exhaust the IDEA's administrative procedures before bringing their ADA claim. (Docket No. 52 at pp. 13–15.) Plaintiffs urge the Court to construe their IDEA and ADA claims as seeking different remedies, asserting that they seek injunctive relief on their IDEA claim and compensatory damages on their ADA claim. (Docket No. 62 at p. 5.) From this premise, plaintiffs argue that they did not have to exhaust administrative procedures for their ADA claim because compensatory damages are unavailable under the IDEA. *Id.* at pp. 5–6.

Section 1415(*l*) of the IDEA provides as follows:

> Nothing in [the IDEA] shall be construed to restrict or limit the rights, procedures, and remedies available under the Constitution, the [ADA], title V of the Rehabilitation Act of 1973, or other Federal laws protecting the rights of children with disabilities, except that before the filing of a civil action under such laws *seeking relief that is also available under [the IDEA]*, the [IDEA's administrative procedures] shall be exhausted to the same extent as would be required had the action been brought under [the IDEA].

20 U.S.C. § 1415(*l*) (emphasis added).

Congress added section 1415(*l*) to the IDEA in reaction to the United States Supreme Court's decision in *Smith v. Robinson*, which held that the Education of the Handicapped Act ("EHA")—predecessor to the IDEA—was "the exclusive avenue" through which a plaintiff asserting a right to a FAPE could pursue her claim. 468 U.S. 992, 1013, 104 S.Ct. 3457, 82 L.Ed.2d 746 (1984). By adding section 1415(*l*), Congress clarified that the EHA (now the IDEA) does not limit the applicability of other laws protecting handicapped children, "except that when a parent brings suit under another law *when that suit could have been brought under the EHA*, the parent will be required to exhaust EHA administrative remedies." S.Rep. No. 99–112, at 3 (1985) (emphasis added). This suggests that the critical inquiry for determining if administrative exhaustion pursuant the IDEA is a prerequisite to bringing an ADA claim is whether the claim "could have been brought under the [IDEA]," not whether the plaintiff requests a specific form of relief unavailable under the IDEA. *See id.*

Courts' applications of section 1415(*l*) have been in line with this broad interpretation of section 1415(*l*)'s exhaustion provision. For example, in *Fry v. Napoleon Community Schools*, parents of a special education student brought claims against the student's school alleging violations of the ADA and seeking money damages for the school's refusal to permit the student to bring her service dog to school. 788 F.3d 622, 624, 627 (6th Cir.2015). The Sixth Circuit Court of Appeals upheld the district court's dismissal of the ADA claim for failure to exhaust the IDEA's administrative procedures, reasoning that even though the plaintiffs sought relief unavailable under the IDEA, the suit turned on "the same questions that would have determined the outcome of [the IDEA's administrative] procedures, had they been used to resolve the dispute." *Id.* at 627. The court interpreted the "relief that is also available" language in section 1415(*l*) as requiring exhaustion "when the injuries alleged can be remedied through IDEA procedures, or when the injuries relate to

the specific substantive protections of the IDEA." *Id.* at 625.

In *Batchelor v. Rose Tree Media School District*, the Third Circuit Court of Appeals upheld the dismissal of plaintiffs' ADA claim for failure to exhaust the IDEA's administrative procedures. 759 F.3d 266 (3d Cir.2014). The court reasoned that even though the compensatory damages sought were unavailable under the IDEA, if the plaintiffs had prevailed at an IDEA administrative proceeding, "the special education hearing officer would have been able to provide them with appropriate relief" because the ADA claim was "related to the enforcement of rights under the IDEA." *Id.* at 275–77.

Both the Second and Seventh Circuit Courts of Appeals have required exhaustion of IDEA's administrative process where disabled students brought ADA claims against school districts and sought money damages. *See Polera v. Bd. of Educ. of Newburgh Enlarged City Sch. Dist.*, 288 F.3d 478 (2d Cir.2002); *Charlie F. by Neil F. v. Bd. of Educ. of Skokie Sch. Dist. 68*, 98 F.3d 989 (7th Cir.1996). The courts found that the IDEA's administrative process could have provided relief for the "events, condition, or consequences" of which the plaintiffs complained, and that section 1415(*l*) of the IDEA therefore required exhaustion. *Polera*, 288 F.3d at 488; *Charlie F.*, 98 F.3d at 992–93. The Seventh Circuit Court of Appeals emphasized that plaintiffs "cannot ignore remedies available under the IDEA and insist on those of their own devising; under the IDEA, educational professionals are supposed to have at least the first crack at formulating a plan to overcome the consequences of educational shortfalls." *Charlie F.*, 98 F.3d at 992.

The First Circuit Court of Appeals has twice required exhaustion of IDEA's administrative procedures for claims not brought pursuant to the IDEA. In *Rose v. Yeaw*, the court found that a non-IDEA claim seeking compensatory damages for a school district's retaliation against a student for his parents' efforts to enforce his educational rights were related to the student's educational placement and provision of a FAPE and were therefore subject to the IDEA's exhaustion requirement. 214 F.3d at 210. Two years later, the court again required a plaintiff seeking only money damages on a non-IDEA claim to exhaust the IDEA's administrative process where the plaintiff's claim was based on allegations that her school had deprived her of a FAPE. *Frazier*, 276 F.3d at 61–64. The court of appeals underscored the importance of exhausting the IDEA's administrative procedures:

> Exhaustion is beneficial regardless of whether the administrative process offers the specific form of remediation sought by a particular plaintiff. After all, the administrative process facilitates the compilation of a fully developed record by a factfinder versed in the educational needs of disabled children—and that record is an invaluable resource for a state or federal court required to adjudicate a subsequent civil action covering the same terrain.

*Id.* at 61.

■ Given this jurisprudential landscape, the Court finds that when a claim relates to the provision of a student's education and alleges injuries that can be remedied through the IDEA's administrative procedures, the plaintiff must first exhaust the IDEA's administrative procedures, regardless of the statute under which the plaintiff sues or the specific relief she seeks. Here, plaintiffs do not contest that their wheelchair access claim relates to the provision of AVR's education and could be remedied by the IDEA's administrative procedures. Therefore,

plaintiffs were required to exhaust the IDEA's administrative process before filing their wheelchair access claim pursuant to the ADA. After exhausting the IDEA's administrative procedures on their wheelchair access claim, plaintiffs will be able to seek compensatory damages pursuant to the ADA in federal court.

This holding, as the Third Circuit Court of Appeals explained:

ensures that the purpose of the IDEA remains intact. In response to a school district's alleged bad behavior, the educational harms suffered by children with disabilities will be addressed first and foremost during the IDEA's administrative process. Once these educational deficiencies have been addressed, victims may seek further remedy in court pursuant to statutory schemes allowing for compensatory and punitive damages, such as Section 504 [of the Rehabilitation Act] and the ADA provide.

*See Batchelor,* 759 F.3d at 278.

Accordingly, the Court **DENIES** plaintiffs' motion for reconsideration of the dismissal of plaintiffs' wheelchair access claim brought pursuant to the ADA.

### IV. DEFENDANTS' REQUEST FOR AN ORDER SETTING A MEDIATION HEARING

On May 11, 2015, defendants submitted to the Court the cost estimates for building a ramp to the library and for building ceilings on the ramps that lead to the second floor and to the area designated for AVR to use her catheter at MFB School. (Docket No. 55.) Defendants also informed the Court that a source for funding the building project had "been identified" and was "in the process of being authorized." *Id.* at p. 1. Defendants then requested that the Court "set a mediation hearing between the parties to discuss the possibility of relocating AVR to a school

that is better suited to her needs and would truly guarantee her [a] FAPE." *Id.* at p. 2.

The Court **DENIES** defendants' request. As explained above, the proper avenue to address plaintiffs' wheelchair access claim is through the IDEA's administrative procedures. The parties may voluntarily consent to a mediation process pursuant to 20 U.S.C. § 1415(e), or plaintiffs may present a complaint pursuant to 20 U.S.C. § 1415(b)(6), which will afford them an opportunity for a due process hearing, *see id.* § 1415(f).

### V. CONCLUSION

For the foregoing reasons, the Court **DENIES** plaintiffs' motion for reconsideration of the Court's order dismissing their wheelchair access claim, (Docket No. 62), and **DENIES** defendants' motion for an order setting a mediation hearing, (Docket No. 55).

**IT IS SO ORDERED.**