**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 15-1804
_____

S.D., a minor, by his parents and natural guardians,
A.D. and R.D.; A.D.; R.D.,
Appellants

v.

HADDON HEIGHTS BOARD OF EDUCATION
_____

APPEAL FROM THE UNITED STATES DISTRICT
COURT
FOR THE DISTRICT OF NEW JERSEY
(1:14-cv-01880)
District Judge: Honorable Jerome B. Simandle
_____

Argued:  January 20, 2016
_____

Before:  JORDAN, HARDIMAN, and GREENAWAY, JR.,
*Circuit Judges*.

(Opinion Filed:  August 18, 2016)

1

Judith A. Gran, Esq.
Sarah E. Zuba, Esq. **[ARGUED]**
Catherine Merino Reisman, Esq.
Reisman, Carolla & Gran
19 Chestnut Street
Haddonfield, NJ 08033

*Counsel for Appellants*

Joseph F. Betley, Esq.
Capehart Scatchard
8000 Midlantic Drive
Laurel Corporate Center, Suite 300
Mount Laurel, NJ 08054

William S. Donio, Esq. **[ARGUED]**
Cooper Levenson
1125 Atlantic Avenue, 3rd Floor
Atlantic City, NJ 08401

*Counsel for Appellee*

_____

OPINION OF THE COURT
_____

GREENAWAY, JR., *Circuit Judge*.

A.D. and R.D., individually and on behalf of their son S.D. (collectively, "Appellants"), filed suit against Haddon Heights Board of Education ("Appellee"), alleging violations of the Rehabilitation Act, 29 U.S.C. § 794(a) ("Section 504"), the Americans with Disabilities Act ("ADA"), 42 U.S.C.

§§ 12101–12213, the First and Fourteenth Amendments of the Constitution of the United States pursuant to 42 U.S.C. § 1983, and New Jersey's Law Against Discrimination, N.J. Stat. Ann. § 10:5–1 et seq. The District Court dismissed Appellants' claims pursuant to Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction because Appellants failed to exhaust the administrative process provided for by the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. §§ 1400–1482. In doing so, the District Court relied on our opinion in *Batchelor v. Rose Tree Media School District*, 759 F.3d 266 (3d Cir. 2014), in which we held that claims that a school district retaliated against a child and/or the child's parents for enforcing the child's rights under the IDEA, although brought pursuant to non-IDEA statutes, were subject to the IDEA exhaustion requirement.

The narrow question before us here is whether claims that a board of education discriminated against a student and/or the student's parents based on his disability, and retaliated against them for enforcing the child's rights under a non-IDEA statute, are subject to the IDEA exhaustion requirement. Because Appellants' alleged injuries are educational in nature and implicate services within the purview of the IDEA, we conclude that Appellants' claims must be exhausted under the IDEA.

## I.  BACKGROUND[1]

### A.  The 2012–13 School Year

S.D. suffers from "multiple medical problems including chronic sinusitis with frequent acute exacerbations, allergic rhinitis, and intermittent asthma."  Am. Compl., Ex. C at 2.  Appellants allege that these medical "impairments [] substantially limit him in . . . the life activity of learning."  *Id.* ¶ 12.  S.D.'s doctor concluded that these medical problems "make it likely that he will have frequent school absence[s] due to acute [and] underlying chronic illness," and suggested that S.D. "should qualify for [Section] 504 plan modifications for school."  *Id.* ¶¶ 25–26; Ex. C at 2.

During the 2012–13 school year, when S.D. was in ninth grade at Haddon Heights Junior/Senior High School in New Jersey, Appellee developed a student accommodation plan for S.D. pursuant to Section 504 ("Section 504 Plan").  *Id.* ¶ 29, Ex. A.  This initial Section 504 Plan, dated October 25, 2012, provided S.D. with "extra time for assignments, tests, and quizzes" and required Appellants to "communicate" with S.D.'s teachers about "any missed work" and absences.  *Id.* ¶¶ 29–30; Ex. A at 2.  Appellants allege that the initial Section 504 Plan "was not properly implemented or effective" because it "did not impose any enforceable obligation on [Appellee] and its teachers" and "did not give S.D. any way to be instructed in and learn the material that he missed while absent."  *Id.* ¶¶ 31–32.

---

[1] The following facts are taken from Appellants' Amended Complaint and exhibits.  As explained *infra* Part II, we accept Appellants' allegations as true.

4

After S.D.'s parents met with Appellee and expressed their concerns, Appellee amended S.D.'s Section 504 Plan. The amended Section 504 Plan, dated April 19, 2013: required teachers to send weekly updates about S.D.'s missing assignments and to provide class notes; required S.D. to complete his assignments within two weeks of any absence; allowed teachers to reduce S.D.'s assignments at their discretion; and required S.D. to create a "to do" list, keep folders of complete and incomplete work, and communicate with teachers, the guidance counselor, and school nurse. *Id.* ¶ 39, Ex. B.

Appellants allege that these Section 504 Plans failed to "provide a mechanism . . . for S.D. to obtain homebound instruction or other supplemental instruction to enable him to keep up with the curriculum . . . and otherwise enjoy the benefits of the educational program to the same extent as his non-disabled peers." *Id.* ¶ 41. As a result, S.D. had "to teach himself the curriculum and try to identify and understand assignments that had been explained when he was absent." *Id.* ¶ 45. Therefore, according to Appellants, S.D. fell "further and further behind." *Id.*

The attendance policy in effect during the 2012–13 school year prohibited a student from earning credit for a year-long course in which the student had accrued more than fifteen absences, unless the student provided certain documentation to excuse the excess absences, including, inter alia, a "[m]edical note from a physician." *Id.*, Ex. D. During the 2012–13 school year, S.D. accrued "over 33 absences[,] . . . most of [which] related to S.D.'s disabilities." *Id.* ¶¶ 48–49. Nevertheless, he passed his courses and earned the requisite number of credits for promotion to the tenth grade. *Id.* ¶ 50.

5

**B.    New Attendance Policy for the 2013–14 School Year**

In the summer of 2013, Appellee enacted a new attendance policy for the 2013–14 school year that required students to be retained if they accrued more than 33 absences in a school year—regardless of whether the absences were "excused, approved, [or] unexcused." *Id.* ¶ 53; Ex. E.[2] Students with more than fifteen unexcused absences were required to attend a "Saturday Credit Reinstatement Program" in order to obtain credit sufficient to pass their courses. *Id.* ¶ 60; Ex. E.

Appellants allege that Appellee "made a deliberate choice to enact the Policy," despite Appellee's knowledge that it was "substantially likely" that the new attendance policy would harm S.D.'s ability to advance in school, in order to "target" students like S.D. who had frequent excused absences. *Id.* ¶¶ 54–55. Appellants assert that, because the

_____

[2] The Policy reads in full:

> STUDENTS ARE LIMITED TO A TOTAL OF 33 ABSENCES IN A SCHOOL YEAR. THIS INCLUDES <u>ANY</u> ABSENCE (INCLUDING EXCUSED, APPROVED, AND UNEXCUSED). The only exception is home instruction approved by the district. STUDENTS WITH MORE THAN 33 DAYS ABSENT WILL BE RETAINED.

*Id.* ¶ 53.

6

new attendance policy allowed students with unexcused absences to make up credits and progress to the next grade through the Saturday Credit Reinstatement Program, but offered no such mechanism for students with absences excused by, for example, a disability, to make up credits, the policy had an impermissible discriminatory effect. *Id.* ¶¶ 61–62.

## C.     The 2013–14 School Year

Appellee readopted S.D.'s amended Section 504 Plan for the 2013–14 school year without reference to, or accommodation for, the new attendance policy. *Id.* ¶¶ 40, 70. By March 2014, S.D. had accumulated thirty-seven absences due to his disability, all of which were excused by medical notes. *Id.* ¶ 76.[3] In a letter dated March 13, 2014, the principal of S.D.'s school informed S.D.'s parents that S.D. would be retained pursuant to the new attendance policy. *Id.* ¶¶ 73–75. After S.D.'s parents received the principal's letter, they filed a complaint with the Office of Civil Rights, but then decided to pursue litigation to try to prevent S.D. from being retained for the 2014–15 school year. *Id.* ¶ 83–84. Appellants commenced the instant federal action on March 25, 2014 by filing a two-count complaint alleging violations of Section 504 and the ADA.

On April 11, 2014, Appellants filed a motion for a preliminary injunction, seeking to enjoin Appellee from retaining S.D. based on his number of absences. On April 15,

---

[3] S.D. accrued fifty-eight absences during the 2013–14 school year, fifty-six of which were excused by a doctor's note. *Id.* ¶¶ 66–67.

7

2014, Appellee notified S.D.'s parents that it had revised S.D.'s Section 504 Plan to require him to make up absences excused by his disability by attending "Saturday school for credit reinstatement." *Id.* ¶ 85. The new Section 504 Plan also provided for "make-up attendance with homebound instruction for absences related to" S.D.'s disability. *Id.*

Appellants allege that the April 2014 Section 504 Plan was insufficient because it required S.D. to "log[] time in the school building" and failed to "appropriately compensate for instruction S.D. missed for earlier absences." *Id.* ¶¶ 91–92. Appellants assert that the requirement for S.D. to attend the Saturday credit reinstatement program was "punitive rather than educational" because S.D. had to "serve" Saturdays with students who had unexcused absences and the program did not "provide a means of obtaining instruction missed." *Id.* ¶ 94.

In June 2014, the parties reached a settlement agreement that resolved Appellants' motion for a preliminary injunction. S.D.'s parents paid for him to complete a summer driver's education course in order to be promoted to eleventh grade. *Id.* ¶ 96. However, Appellants now allege that this requirement was "punitive and retaliatory" because it "serve[d] no educational purpose." *Id.* ¶ 99.

**D.     Appellants' Amended Complaint and the District Court's Opinion**

In August 2014, the District Court granted Appellants leave to file an amended complaint that alleged six counts of discrimination and retaliation by Appellee based on S.D.'s disability and assertion of his rights under Section 504. The Amended Complaint attached several exhibits, including two

8

letters from S.D.'s doctor, S.D.'s four Section 504 Plans, and the Board's two attendance policies. Appellants sought thirteen forms of relief, including, inter alia, compensatory education and compensatory and punitive damages. *Id.* at 27–28.

Appellee subsequently filed a motion to dismiss for lack of subject matter jurisdiction and for failure to state a claim, pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), respectively. The District Court concluded that Appellants' claims required compliance with the IDEA's administrative process and dismissed the claims without prejudice for lack of subject matter jurisdiction. *See A.D. v. Haddon Heights Bd. of Educ.*, 90 F. Supp. 3d 326, 341–43 (D.N.J. 2015).[4] Upon dismissing Appellants' federal claims, the District Court declined to exercise supplemental jurisdiction over Appellants' state law claims, and dismissed those as well. *Id.* at 342 n.14.

This timely appeal followed.

## II. JURISDICTION AND STANDARD OF REVIEW

Appellants invoked federal jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343; however, the District Court's jurisdiction is squarely at issue in this case. We have jurisdiction to hear this appeal pursuant to 28 U.S.C. § 1291.

---

[4] It is undisputed that Appellants have not exhausted the IDEA administrative process.

9

We exercise plenary review over a district court's order dismissing a complaint for lack of subject matter jurisdiction. *Batchelor*, 759 F.3d at 271. We construe Appellee's motion as a facial challenge to the District Court's subject matter jurisdiction, and, therefore, we apply the same standard of review in considering a motion to dismiss under Rule 12(b)(6)—*i.e.*, we view the alleged facts in favor of Appellants, the non-moving party. *See Constitution Party of Pa. v. Aichele*, 757 F.3d 347, 358 (3d Cir. 2014).[5]

---

[5] Challenges to subject matter jurisdiction under Rule 12(b)(1) may be "facial" or "factual," and the "distinction determines how the pleading must be reviewed." *Aichele*, 757 F.3d at 357. "Facial attacks . . . contest the sufficiency of the pleadings, and the trial court must accept the complaint's allegations as true." *Taliaferro v. Darby Twp. Zoning Bd.*, 458 F.3d 181, 188 (3d Cir. 2006) (quoting *Turicentro, S.A. v. Am. Airlines*, 303 F.3d 292, 300 n.4 (3d Cir. 2002)). In contrast, a factual challenge "concerns the actual failure of a plaintiff's claims to comport factually with the jurisdictional prerequisites," and permits the district court to independently evaluate all the evidence to resolve disputes over jurisdictional facts. *Aichele*, 757 F.3d at 358 (quoting *CNA v. United States*, 535 F.3d 132, 139 (3d Cir. 2008))); *see S.R.P. ex rel. Abunabba v. United States*, 676 F.3d 329, 332 (3d Cir. 2012). Here, the District Court construed Appellee's motion to dismiss as a factual attack. Because Appellee neither answered Appellants' Amended Complaint, nor offered any factual averments in support of its motion to dismiss, we conclude that the District Court erred. *See Aichele*, 757 F.3d at 358 ("The Commonwealth filed the [jurisdictional] attack before it filed any answer to the Complaint or otherwise presented competing facts. Its motion [to dismiss] was

## III. ANALYSIS

### A. The IDEA Statutory Scheme

Congress enacted the IDEA to "ensure that all children with disabilities have available to them a free appropriate public education that emphasizes special education and related services designed to meet their unique needs . . . ." 20 U.S.C. § 1400(d)(1)(A). States receive federal education funding upon complying with several requirements, including making available a free appropriate public education ("FAPE") to children with disabilities and ensuring that such children and their parents are provided with due process. *Batchelor*, 759 F.3d at 271–72. If a child's parents believe that a school has not fulfilled its statutory obligations, the IDEA provides them an avenue to file a complaint and obtain an administrative hearing "with respect to any matter relating to the identification, evaluation, or educational placement of the child, or the provision of a free appropriate public education to such child." 20 U.S.C. § 1415(b)(6)(A); *see also id.* § 1415(f). After exhausting this administrative hearing process, "[a]ny party aggrieved by the findings and decision[s]" made during the hearing may seek judicial review in federal court. *Id.* § 1415(i)(2)(A). "In the normal case, exhausting the IDEA's administrative process is required in order for the statute to 'grant subject matter

---

therefore, by definition, a facial attack."). However, at oral argument, both parties conceded that any error was harmless. We agree. The District Court stated that it accepted Appellants' allegations as true for purposes of the motion to dismiss, and only considered the Amended Complaint and attached exhibits.

11

jurisdiction to the district court.'" *Batchelor*, 759 F.3d at 272 (quoting *Komninos v. Upper Saddle River Bd. of Educ.*, 13 F.3d 775, 778 (3d Cir 1994)).

Section 1415(*l*) of the IDEA requires exhaustion of the administrative hearing process not only in actions brought directly under the IDEA, but also "in non-IDEA actions where the plaintiff seeks relief that can be obtained under the IDEA." *Id.* Section 1415(*l*) provides:

> Nothing in this chapter shall be construed to restrict or limit the rights, procedures, and remedies available under the Constitution, the Americans with Disabilities Act of 1990 [42 U.S.C. § 12101 et seq.], title V of the Rehabilitation Act of 1973 [29 U.S.C. § 791 et seq.], or other Federal laws protecting the rights of children with disabilities, except that before the filing of a civil action under such laws seeking relief that is also available under this subchapter, the procedures under subsections (f) and (g) shall be exhausted to the same extent as would be required had the action been brought under this subchapter.

20 U.S.C. § 1415(*l*). "This provision bars plaintiffs from circumventing [the] IDEA's exhaustion requirement by taking claims that could have been brought under [the] IDEA and repackaging them as claims under some other statute." *Batchelor*, 759 F.3d at 272 (quoting *Jeremy H. v. Mount Lebanon Sch. Dist.*, 95 F.3d 272, 281 (3d Cir. 1996)).

In *Batchelor*, we explained that "determining if the IDEA's administrative process must be exhausted before bringing claims in federal court turns on whether the parties

could have asserted the claims under the IDEA." *Id.* at 273. "Intertwined with this inquiry is whether the claim could have been remedied by the IDEA's administrative process." *Id.* We reiterate here that the ultimate question is whether a non-IDEA claim falls within the scope of a complaint contemplated by the IDEA—*i.e.*, whether the non-IDEA claim "relate[s] to the identification, evaluation, or educational placement of the child, or the provision of a free appropriate public education to such child." *Id.* at 274 (quoting 20 U.S.C. § 1415(b)(6)(A)). To answer this question, a court must evaluate the nature of a plaintiff's claims and the "theory behind the grievance." *Id.* at 276 (quoting *Charlie F. v. Bd. of Educ. of Skokie Sch. Dist. 68*, 98 F.3d 989, 992 (7th Cir. 1996)).

## B. *Batchelor* and the Scope of Section 1415(*l*) of the IDEA

In *Batchelor*, a mother ("Ms. Batchelor") sued a school district individually and on behalf of her son, Ryan (collectively, "plaintiffs"). When Ryan was diagnosed with attention deficit hyperactivity disorder in his freshman year of high school, the school district developed an educational plan pursuant to Section 504. *Id.* at 269. By Ryan's sophomore year, however, he was struggling and Ms. Batchelor complained to the school district that it was not providing Ryan with the support services required by the Section 504 plan. *Id.* At that time, Ryan was tested and diagnosed with an additional math disability and the school district developed an individualized education plan ("IEP") for Ryan pursuant to the IDEA. *Id.* Ms. Batchelor and the school district also entered into a settlement agreement. *Id.* at 270.

However, plaintiffs alleged that, during Ryan's junior and senior years, the school district engaged in retaliatory acts against them, such as changing Ryan's tutor, assigning Ryan to a teacher who was known to be a bully, and refusing to allow Ryan to participate in extracurricular activities. *See id.* at 270, 274. The plaintiffs then sued, asserting three federal claims: (1) retaliation/failure to provide a FAPE, in violation of the IDEA; (2) retaliation in violation of Section 504; and (3) retaliation in violation of the ADA. *Id.* at 270.

We concluded that the Section 504 and ADA retaliation claims "relate[d] unmistakably" and "palpably relate[d]" to the school district's provision of a FAPE to Ryan. *Id.* at 273–74 (quoting *Rose v. Yeaw*, 214 F.3d 206, 210 (1st Cir. 2000)). In other words, there was "a logical path to be drawn from [plaintiffs' non-IDEA] claims of retaliation to the District's failure to provide, and Ms. Batchelor's effort to obtain for, Ryan" a FAPE pursuant to the IDEA. *Id.* at 274–75. Because the plaintiffs' Section 504 and ADA retaliation claims "relate[d] to . . . the provision of a [FAPE]," they could have been brought and remedied under the IDEA, and, pursuant to § 1415(*l*), had to be administratively exhausted. *Id.* at 274.

In so holding, we invoked the "strong policy reason [for] requiring exhaustion of remedies available under the IDEA." *Id.* at 275. Exhaustion "develop[s] the record for review on appeal," "encourag[es] parents and the local school district to work together to formulate an IEP for a child's education," and "allow[s] the education agencies to apply their expertise and correct their own errors." *Id.* (internal quotation and citation omitted). Thus, based on "the plain language and structure of the IDEA, . . . the purpose of the

14

IDEA's exhaustion requirement and the policy concerns supporting it," we concluded that "retaliation claims related to the enforcement of rights under the IDEA must be exhausted before a court may assert subject matter jurisdiction." *Id.*

### C.    Appellants' Non-IDEA Claims

Although Appellants' non-IDEA claims do not, as in *Batchelor*, arise from their enforcement of rights explicitly under the IDEA, we nevertheless conclude, based on the nature of Appellants' allegations, that their discrimination and retaliation claims are subject to the IDEA exhaustion requirement.   Our holding here is a narrow extension of *Batchelor*, but we continue to focus on whether a plaintiff's alleged injuries could be remedied through the IDEA administrative process because they relate to the "the identification, evaluation, or educational placement" of a child or to "the provision of a free appropriate public education to such child," as defined by the IDEA, 20 U.S.C. § 1415(b)(6)(A).

Here, Counts I and II of the Amended Complaint assert discrimination claims under Section 504 and the ADA, respectively.   Am. Compl. ¶¶ 102–113.   The District Court succinctly summarized the relevant allegations as: "whether [Appellee] appropriately identified S.D. as a student with a disability; [] what constitutes a [FAPE] for S.D.; and whether, and to what extent, the various accommodations sufficiently addressed S.D.'s right to a FAPE." *A.D.*, 90 F. Supp. 3d at 341.   Importantly, Appellants' discrimination claims arise from educational harm to S.D.; Appellants allege that the Section 504 Plans developed by Appellee were deficient such that S.D. was denied "educational opportunities" and "fell further and further behind" regarding his progress with the

15

curriculum. Am. Compl. ¶¶ 41–46; *see Batchelor*, 759 F.3d at 278 ("It is clear that [b]oth the genesis and the manifestations of the problem[s] are educational.") (quotation marks and citation omitted).

We conclude that Appellants' alleged education injuries in Counts I and II of their Amended Complaint relate to the provision of a FAPE, as defined by the IDEA. The IDEA defines "FAPE" to include "special education and related services" that are free, include an "appropriate" education, and are provided in conformity with an IEP. 20 U.S.C. § 1401(9). Under the IDEA, "special education" means "specially designed instruction . . . to meet the unique needs of a child with a disability." *Id.* § 1401(29). Central to Appellants' discrimination claims is that Appellee should have provided alternative or supplemental instruction to S.D. *See, e.g.,* Am. Compl. ¶ 41 (Appellee "did not provide . . . homebound instruction or other supplemental instruction" to S.D.); *id.* ¶ 46 (Appellee failed "to offer any alternative instruction to S.D."); *id.* ¶ 56 (referencing homebound instruction); *id.* ¶ 80 (Appellee failed to "offer S.D. any way to recoup the instruction he missed"); *id.* ¶ 92 ("[I]t is critical that arrangements for [S.D.] to make up educational time he has missed focus on the instruction he needs most."). The theory behind Appellants' grievance is that Appellee failed to provide instruction tailored to meet S.D.'s special needs resulting from his disability. Their claims therefore relate to the provision of a FAPE to S.D. Thus, Appellants' discrimination claims in Counts I and II could have been remedied through the IDEA's administrative process.

Appellants' retaliation claims in Counts III and IV challenge the appropriateness of Appellee's initial decision to

16

retain S.D. in the tenth grade, its enactment of the revised attendance policy to retain students based on a total number of absences, and its choice of make-up courses to allow S.D. to progress to the eleventh grade. *See id.* ¶¶ 120–123, 129–132. Appellants allege that Appellee's revised attendance policy "prevent[ed] S.D. from making educational progress" and that Appellee took "retaliatory actions" and "adverse actions" against them as a result of "their efforts to vindicate S.D.'s right to a FAPE." *Id.* ¶¶ 9, 119–23, 129–32. These claims also arise from educational harm and challenge the provision of a FAPE to S.D. Here, as in *Batchelor*, there is a "logical path to be drawn from [Appellants'] claims of retaliation to [Appellee's] failure to provide, and [Appellants'] effort to obtain for," S.D. a FAPE. 759 F.3d at 274–75. Moreover, because the revised attendance policy forms the basis for all the retaliation claims, and because that policy made express exception for "home instruction approved by the district," Am. Compl. ¶ 53; Ex. E, those claims too "could have been remedied by the IDEA's administrative process," *Batchelor*, 759 F.3d at 273.

Accordingly, Appellants' claims asserted pursuant to the ADA, Section 504, and § 1983 fall within the ambit of the IDEA and, because Appellants have not exhausted the IDEA administrative process, must be dismissed without prejudice. Again, we invoke the "strong policy" encouraging exhaustion of administrative remedies in these types of cases. Where parents challenge a school's provision of a FAPE and allege educational harm to a child, remediation of the alleged

17

educational deficiencies is best addressed in the first instance by educational professionals, rather than a court.[6]

Appellants offer several arguments against dismissal, none of which are availing.

First, Appellants argue that S.D. is ineligible for IDEA services and therefore relief is not "available" to them under the IDEA. (Appellants' Br. at 17–20.) We, however, agree with the District Court that Appellants' allegations about S.D.'s disability and its effect on his education "potentially implicate[] the statutory entitlements of the IDEA." *See A.D.*, 90 F. Supp. 3d at 338. For a student to be eligible for IDEA services, the student must both: (1) have a disability that falls into one or more of the statute's enumerated categories; and (2) because of that disability, need "special education and related services." 20 U.S.C. § 1401(3). Asthma is an enumerated disability. 34 C.F.R. § 300.8(c)(9). The IDEA also requires that asthma or any other health impairment "[a]dversly affect[]" the student's educational performance. *Id.* Here, Appellants' Amended Complaint alleges that S.D.'s medical problems "impact[] his ability to attend school and to learn," Am. Compl. ¶ 3, and "substantially limit him in major life activities, specifically the life activity of learning," *id.* ¶ 12. Further, as we explained above, Appellants' allegations—in particular Appellants' complaint that S.D. never received supplemental instruction—implicate a potential need for "special education and related services."

---

[6] Because we conclude that the District Court lacked jurisdiction over Appellants' federal claims, we will affirm the District Court's dismissal of Appellants' state law claims.

Therefore, we cannot conclude at this time that S.D. is ineligible for relief under the IDEA.

Second, Appellants argue that a FAPE under the ADA and Section 504 differs from the FAPE defined by the IDEA and, therefore, their ADA and Section 504 claims cannot be remedied through the IDEA administrative process. (Appellants' Br. at 33–40.) Although the statutes are not identical, we have previously recognized that the IDEA's substantive protections overlap with those of Section 504 and the ADA. *See D.K. v. Abington Sch. Dist.*, 696 F.3d 233, 253 n.8 (3d Cir. 2012) ("[O]ur finding that the School District did not deny D.K. a FAPE [under the IDEA] is equally dispositive of Plaintiffs' §504 claim."); *P.P. ex rel Michael P. v. W. Chester Area Sch. Dist.*, 585 F.3d 727, 735 (3d Cir. 2009) (stating that "[t]he IDEA and § 504 of the Rehabilitation Act do similar statutory work," reviewing similar provisions of the two statutes, and concluding that the IDEA's statute of limitations applies to plaintiffs' Section 504 claims); *see also* 34 C.F.R. § 104.33(b)(2) (Section 504 regulation providing that "[i]mplementation of an [IEP under the IDEA] is one means of meeting the standard" for a FAPE under Section 504). Moreover, as we have concluded above, the theory behind Appellants' grievances focuses in large part on Appellee's failure to provide special instruction to meet S.D.'s educational needs arising from his disability, so that their claims relate to the provision of a FAPE as defined by the IDEA.

Third, Appellants contend that the conclusion that S.D.'s educational injuries could be remedied through the IDEA administrative process assumes that Appellee violated its "Child Find" duty imposed by the IDEA. (Appellants' Br.

19

at 20.) We disagree. "School districts have a continuing obligation under the IDEA and § 504—called 'Child Find'—to identify and evaluate all students who are reasonably suspected of having a disability under the statutes." *D.K.*, 696 F.3d at 249 (emphasis omitted) (quoting *P.P.*, 585 F.3d at 738). We offer no opinion here as to whether Appellee violated its Child Find duty. We simply decline to equate our finding that Appellants' alleged educational harms could be remedied through the IDEA administrative process with a finding that Appellee violated its Child Find duty.

Our decision here does not foreclose future litigation arising from S.D.'s education. *See Batchelor*, 759 F.3d at 278 n.15 ("This is not to say that Appellants will not be entitled to compensatory damages for their retaliation claims *after* they exhaust the IDEA administrative process. . . . Appellants may very well file a complaint containing virtually identical claims as asserted in the Complaint before us today."). We only hold that Appellants must first exhaust their claims through the IDEA administration process. The District Court correctly determined that the Amended Complaint should be dismissed for lack of subject matter jurisdiction.

## IV.    CONCLUSION

For the foregoing reasons, we will affirm the judgment of the District Court.

20