**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 22-2874

_____

JENNICA CARMONA, Individually, and as Parent and Natural Guardian of B.A.;
KERRY GALLAGHER, Individually, and as Parent and Natural Guardian of K.G.;
ANGELLE KURSAR, Individually, and as Parent and Natural Guardian of D.K.;
JAMES NAZZARO, Individually, and as Parent and Natural Guardian of J.N.; LISA
MATTESSICH**, Individually, and as Parent and Natural Guardian of M.M.; NICOLE
TIERNEY, Individually, and as Parent and Natural Guardian of K.D.; DORENE
CAMP*, Individually, and as Parent and Natural Guardian of S.C., C.C. and T.C.; LISA
DRISCOLL, Individually, and as Parent and Natural Guardian of M.D.; DIANA
LOGRASSO, Individually, and as Parent and Natural Guardian of K.I.; KELLY
OSTERMAN, Individually, and as Parent and Natural Guardian of J.L.; TINA
DELORENZO, Individually, and as Parent and Natural Guardian of N.D.; MUNIRA
EDMONDS, Individually, and as Parent and Natural Guardian of A.K. and all other
similarly situated; GABRIELLE KINDER, Individually, and as Parent and Natural
Guardian of A.M.,
Appellants

v.

NEW JERSEY DEPARTMENT OF EDUCATION; AUDUBON PUBLIC SCHOOL
DISTRICT; CAMDEN CITY SCHOOL DISTRICT; CAMDEN COUNTY SCHOOL
DISTRICT; CAPE MAY COUNTY PUBLIC SCHOOL DISTRICT; ESSEX COUNTY
PUBLIC SCHOOL DISTRICT; GLOUCESTER COUNTY PUBLIC SCHOOL
DISTRICT; LOWER CAPE MAY REGIONAL SCHOOL DISTRICT; MANASQUAN
PUBLIC SCHOOL DISTRICT; MATAWAN ABERDEEN REGIONAL SCHOOL
DISTRICT; MIDDLE TOWNSHIP PUBLIC SCHOOL DISTRICT; MIDDLETOWN
TOWNSHIP PUBLIC SCHOOL DISTRICT; MONMOUTH COUNTY PUBLIC
SCHOOL DISTRICT; MORRIS COUNTY PUBLIC SCHOOL DISTRICT; OCEAN
COUNTY PUBLIC SCHOOL DISTRICT; ROXBURY TOWNSHIP PUBLIC SCHOOL
DISTRICT; RUMSON-FAIR HAVEN REGIONAL HIGH SCHOOLS; TOMS RIVER
REGIONAL SCHOOL DISTRICT; WASHINGTON TOWNSHIP SCHOOL
DISTRICT; WEST ORANGE PUBLIC SCHOOLS; COMMISSIONER ANGELICA
ALLEN-MCMILLAN, In her official capacity; AVE ALTERSITZ, In her official

capacity; DR. J. SCOTT CASCONE, In his official capacity; JOSEPH CASTELLUCCI, In his official capacity; ANDREW DAVIS, In his official capacity; DR. JUDITH DESTEFANO-ANEN, In her official capacity; THOMAS GIALANELLA, In his official capacity; DEBRA GULICK, In her official capacity; ROGER JINKS, in his official capacity; DR. FRANK KASYAN, in his official capacity; JOSEPH MAJKA, In his official capacity; KATRINA MCCOMBS, In her official capacity; JEFFREY MOHRE, In his official capacity; CHARLES MULLER, in his official capacity; DR. LOVELL PUGH-BASSETT, in her official capacity; LORETTA RADULIC, in her official capacity; DR. LESTER RICHENS, in his official capacity; DAVID SALVO, in his official capacity; MARY ELLEN WALKER, in her official capacity; JOSEPH S. ZARRA, in his official capacity

(*Dismissed pursuant to Court Order dated 12/20/2022)
(**Dismissed pursuant to Court Order dated 9/6/2023)
_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. No. 2-21-cv-18746)
U.S. District Judge: Honorable John M. Vazquez
_____

Submitted under Third Circuit L.A.R. 34.1(a)
July 13, 2023
_____

Before: SHWARTZ, RESTREPO, and CHUNG, Circuit Judges.

(Filed: September 8, 2023)

_____

OPINION*
_____

CHUNG, Circuit Judge.

Plaintiff-Appellants are parents of children with disabilities in New Jersey who

_____

* This disposition is not an opinion of the full Court and, pursuant to 3d Cir. I.O.P. 5.7, does not constitute binding precedent.

2

sued Defendant-Appellees—the New Jersey Department of Education ("NJDOE"), the NJDOE Commissioner, their children's school districts, and superintendents of those districts (collectively, the "Educators")—in a putative class action challenging the suspension of in-person education and services during the COVID-19 pandemic under, inter alia, the Individuals with Disabilities Education Act ("IDEA") and the Racketeer Influenced and Corrupt Organizations Act ("RICO"). The District Court dismissed all claims because the IDEA and IDEA-related claims (Counts One through Eight) were unexhausted, and the RICO allegations (Count Nine) did not establish standing and were otherwise inadequate. We will affirm the District Court's order dismissing the Plaintiff-Appellants' Amended Complaint for failure to exhaust Counts One through Eight and for lack of standing to bring Count Nine.

## I.    BACKGROUND[1]

In March 2020, all New Jersey schools were closed by gubernatorial executive order due to the COVID-19 pandemic. A973–74. Schools continued to educate students "through appropriate home instruction," id., and remained closed for the rest of the 2019–20 school year. They gradually reopened over the 2020–21 school year, starting with a hybrid of distance and in-person learning and transitioning to full-time in-person instruction. Exec. Order No. 175 (Aug. 13, 2020); A1023, Exec. Order No. 214 (Jan. 11, 2021); A979. During this time, the United States Department of Education ("USDOE") provided guidance on how schools might fulfill their obligations to students with

---

[1]    Because we write for the parties, we recite only facts pertinent to our decision.

3

disabilities and informed schools that "ensuring compliance with the [IDEA], Section 504 of the Rehabilitation Act …, and Title II of the Americans with Disabilities Act should not prevent any school from offering educational programs through distance instruction." A955.

In October 2021, the Plaintiff-Appellants (hereinafter, the "Parents") challenged the switch to distance learning in the 2019–20 and 2020–21 school years for their children with disabilities by filing suit against the Educators in the District Court.[2] The Parents filed suit for themselves and on behalf of a putative class of "all other similarly situated school-aged children with disabilities covered by IDEA in New Jersey and their parents." A257.[3]

The Parents amended their complaint and articulated eight causes of action based in federal and state law all related to alleged deprivations of adequate education in violation of the IDEA. In support of these claims, the Parents generally alleged that their children's Individualized Education Plans ("IEP") had been unilaterally altered by the shift to distance learning and deprived them of the right to a free and appropriate public

---

[2] Some Appellees (the NJDOE, Angelica Allen-McMillan, Ave Altersitz, Judith DeStefano-Anen, Roger Jinks, Charles Muller, Lovell Pugh-Bassett, Lester W. Richens, and Joseph S. Zarra) did not file a brief on appeal, and they have explained their lack of participation in this appeal by letter to the Court indicating they were not properly served before the District Court. Letter, Carmona et al. v. New Jersey Dep't of Educ. et al., No. 22-2874 (3d Cir. Dec. 1, 2022), ECF No. 26.

[3] They also moved for a preliminary injunction declaring "in-person instruction and services" to be the class's "status quo pendency placement" and enjoining the Educators from "unilaterally changing [their] placement," for more than ten days at a time, among other things. A56–57. The District Court denied the Parents' motion for a preliminary injunction.

education ("FAPE") under the IDEA. The Parents contended this was a change of educational placement requiring prior written notice. See 20 U.S.C. § 1415(b)(3). At the time their suit was filed, the Parents had "initiated, but … not exhausted, their administrative remedies." A203.

Count Nine of the Amended Complaint, civil RICO, alleged that individual Educator defendants had engaged in a scheme wherein they falsely represented their IDEA compliance during the pandemic to continue to obtain federal IDEA funding. A275, 277–306. The false statements allegedly caused the federal government to wrongfully remit IDEA Part B funds to the NJDOE and defendant school districts.[4] This, in turn, allegedly deprived Plaintiffs of the benefit of Part B funds apparently because said funds were diverted from benefiting students with disabilities and used for other purposes such as the purchase of personal protective equipment. A304.

The Educators moved to dismiss the Amended Complaint and the District Court granted their motion. The District Court concluded that, in Counts One through Eight, the Parents were required to exhaust administrative remedies because they sought "relief available under the IDEA." A13. The District Court further concluded that the Parents had not exhausted their remedies, nor shown an exception applied. These counts were thus dismissed for want of subject matter jurisdiction. The District Court also dismissed the Parents' RICO count because, among other infirmities, the Parents "allege[d] only indirect harm flowing from the allegedly fraudulent scheme" and therefore lacked

---

[4]    Part B funds are the federal monies promised to States that ensure students receive a FAPE. 20 U.S.C. § 1412.

5

standing. A15. The Parents chose to stand on their Amended Complaint rather than amending it again. The District Court then issued its final order and the Parents timely appealed.[5]

## II. DISCUSSION[6]

Our review of the District Court's dismissal for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1) is de novo, as is our review of dismissal for failure to state a claim pursuant to Rule 12(b)(6). In re Horizon Healthcare Servs. Inc. Data Breach Litig., 846 F.3d 625, 632 (3d Cir. 2017); Phillips v. Cnty. of Allegheny, 515 F.3d 224, 230 (3d Cir. 2008). The District Court determined, and the parties do not dispute, that the Educators' subject matter jurisdiction challenge to the first eight counts was a facial attack. A5. A facial attack "challenges subject matter jurisdiction without disputing the facts alleged in the complaint, and it requires the Court to 'consider the allegations of the complaint as true.'" Davis v. Wells Fargo, 824 F.3d 333, 346 (3d Cir. 2016) (quoting Petruska v. Gannon Univ., 462 F.3d 294, 302 n.3 (3d

---

[5]   Dorene Camp, individually and as Parent and Natural Guardian of S.C./C.C./T.C., was withdrawn from this matter by this Court's Order on December 20, 2022. ORDER, Carmona et al. v. New Jersey Dep't of Educ. et al., No. 22-2874 (3d Cir. Dec. 20, 2022), ECF No. 31. Lisa Mattessich, individually, and as Parent and Natural Guardian of M.M., sought to voluntarily withdraw from this matter on February 17, 2023, and the Court granted her withdrawal on September 6, 2023. ORDER, Carmona et al. v. New Jersey Dep't of Educ. et al., No. 22-2874 (3d Cir. Sept. 6, 2023), ECF No. 97.

[6]   We have appellate jurisdiction to review the District Court's dismissal for lack of subject matter jurisdiction pursuant to 28 U.S.C. § 1291. Batchelor v. Rose Tree Media Sch. Dist., 759 F.3d 266, 271 (3d Cir. 2014). The District Court had jurisdiction over the Parents' RICO claims pursuant to 28 U.S.C. § 1331, and Section 1291 provides our appellate jurisdiction. Maio v. Aetna, Inc., 221 F.3d 472, 481 (3d Cir. 2000).

Cir. 2006)). In reviewing the dismissal of the RICO count for failure to state a claim, we likewise "accept [the Parents'] well-pleaded factual allegations as true and draw all reasonable inferences from those allegations in [their] favor." In re Horizon, 846 F.3d at 633.

A.   IDEA and IDEA-Related Claims (Counts One – Eight)

Under the IDEA, every State that receives federal funds for "educating children with disabilities" must "provide a … FAPE … to all eligible children." Endrew F. ex rel. Joseph F. v. Douglas Cnty. Sch. Dist. RE-1, 580 U.S. 386, 390 (2017) (citations omitted); Batchelor v. Rose Tree Media Sch. Dist., 759 F.3d 266, 271 (3d Cir. 2014). Parents who believe their child has been denied a FAPE may request a due process hearing to remedy the alleged denial. Mary T. v. Sch. Dist. of Phila., 575 F.3d 235, 240 (3d Cir. 2009); 20 U.S.C. § 1415(b)(6)(A). While a party may dispute the results of the due process hearing by filing a federal lawsuit, that party must "complet[e] the IDEA's administrative process, i.e., exhaust[]" administrative remedies before any such lawsuit is filed. Batchelor, 759 F.3d at 272; D.S. v. Bayonne Bd. of Educ., 602 F.3d 553, 558 (3d Cir. 2010); 20 U.S.C. § 1415(i)(2). The exhaustion requirement applies to lawsuits brought under the "Constitution, the [ADA], [Section 504], or other Federal laws protecting the rights of children with disabilities" when the remedy requested is one the IDEA makes available. 20 U.S.C. § 1415(*l*); Luna Perez v. Sturgis Pub. Sch., 143 S. Ct. 859, 864 (2023).[7]

---

[7]   In Perez, the Supreme Court held that exhaustion is not required when a plaintiff seeks "a form of relief … [the] IDEA does not provide." 143 S. Ct. at 864. Courts have

The District Court determined the Parents were required to exhaust the claims in Counts One through Eight because they sought to redress the Educators' alleged failure to provide a FAPE with remedies available under the IDEA. The Parents had not completed due process hearings challenging changes to their children's IEPs, however, so the District Court dismissed Counts One through Eight for failure to exhaust. The Parents vigorously argue they did exhaust or, alternatively, that an exhaustion exception applied.

### 1. The District Court Correctly Concluded that the Parents Failed to Exhaust Administrative Remedies

The Parents contend that they satisfied the exhaustion requirement because, as set forth in the Amended Complaint, they "were in the process of exhausting their administrative remedies."[8] Parents' Opening Br. at 17.

We reject the Parents' contention that initiating the required due process hearing

---

determined that IDEA's remedies include "prospective injunctive relief" and "retroactive reimbursement." Sch. Comm. of Burlington v. Dep't of Educ., 471 U.S. 359, 370 (1985). Relief that is unavailable under the IDEA includes "compensatory and punitive damages." Chambers ex rel. Chambers v. Sch. Dist. of Phila. Bd of Educ., 587 F.3d 176, 186 (3d Cir. 2009) (explaining the IDEA is not meant to compensate for "pain and suffering where a FAPE is not provided."). When asked to address Perez, the Parents asserted that Perez is inapplicable to their case. Parents' Supp. Br. at 7. Our own review of the Amended Complaint confirms that the Parents did not seek compensatory damages; rather, the Parents only requested remedies provided by the IDEA. A307–08. While the Parents made cursory references to damages, we find these cursory references insufficient to constitute a claim for damages. See Phillips, 515 F.3d at 232–33 (rejecting "blanket assertion[s] of … entitlement to relief").

[8]     In the Amended Complaint, the Parents each alleged that they had initiated individual administrative cases. A223–56. On appeal, the Parents describe the updated status of those cases: some had settled, others had completed administrative proceedings, and one appellant's case was yet unresolved. Parents' Opening Br. at 15–17.

proceedings satisfies the IDEA's administrative exhaustion requirement. To satisfy this requirement, before filing their suit, plaintiffs must have the "findings and decision" from a due process hearing in hand. 20 U.S.C. § 1415(i)(2)(A). Merely beginning that process is not enough. Batchelor, 759 F.3d at 272; see Woodford v. Ngo, 548 U.S. 81, 90 (2006) (exhaustion "means using all steps that the agency holds out" (citation omitted)); see also Komninos ex rel Komninos v. Upper Saddle River Bd. of Educ., 13 F.3d 775, 777–79, 781 (3d Cir. 1994). Accordingly, the Parents' argument that they could have shown exhaustion if only the District Court had called for oral argument (i.e., if only the District Court had delayed litigation until exhaustion was complete) is inapposite. See also 20 U.S.C. § 1415(l) (exhaustion precedes "filing of a civil action"). We thus affirm the District Court's determination that the Parents failed to exhaust their claims seeking IDEA relief.

2.  The District Court Correctly Concluded That No Exceptions Excuse the Parents' Failure to Exhaust

The Parents have alternatively argued the systemic exception to exhaustion applies to their claim and that IDEA's "stay put" provision also excuses their failure to exhaust.

a.  The Systemic Exception Does Not Apply

Before the District Court, the Parents asserted that, because their suit is a putative class action and they have sought relief from alleged systemic violations of the IDEA, the "systemic exception" should have applied. A9–11.[9] The systemic exception applies

---

[9]    On appeal, the Parents have not fully developed a systemic exception to exhaustion argument, but we address the systemic exception herein out of an abundance of caution where the Parents' exception-to-exhaustion argument is interspersed with

when claims challenge "those procedural violations that 'effectively deprive[] plaintiffs of an administrative forum.'" T.R. v. Sch. Dist. of Phila., 4 F.4th 179, 192 (3d Cir. 2021) (alteration in original) (quoting Hoeft v. Tucson Unified Sch. Dist., 967 F.2d 1298, 1305 (9th Cir. 1992)). Class action, i.e., the "volume of complaints," may be relevant to determining when plaintiffs' claims cannot "be[] remedied by administrative bodies." Id. at 192–93 (citing J.S. v. Attica Cent. Sch., 386 F.3d 107, 113–14 (2d Cir. 2004)). But generally, the systemic exception is for matters challenging "the framework and procedures for assessing and placing students in appropriate educational programs," which are matters wherein "an administrative record would not have been of substantial benefit to the district court." J.S., 386 F.3d at 114.

The District Court was correct not to apply the systemic exception here where the Parents alleged IDEA violations that did not "undermine access to the administrative hearing process itself." T.R., 4 F.4th at 193 (systemic exception did not apply where parent plaintiffs "dispute[d] the adequacy of the quantity, quality, and consistency" of interpretation/translation services but did not allege that "access to the administrative hearing process" had been compromised by such failures). These alleged violations included, among others: unilateral IEP changes from in-person learning to distance learning; failure to maintain in-person services for disabled students; and failure to involve the Parents in decisions about placement. A262–65. While a high volume of complaints could arise from these alleged violations, they did not involve a deprivation of

references to the Educators' alleged systemic failures with respect to providing FAPEs to the Parents' children and similarly situated children in New Jersey.

10

process that calls for the application of the systemic exception. As explicitly set forth in the Amended Complaint, the Parents availed themselves of (though without completing) the administrative process and they did not allege their access thereto was hindered.

> b. The "Stay Put" Provision Does Not Excuse the Failure to Exhaust

When an IEP changes a student's educational placement, such as when an IEP calls for a student to move from one school to another, parents often bring IDEA administrative actions. The purpose of the "stay put" provision, 20 U.S.C. § 1415(j), is to guarantee "a student's right to a stable learning environment" while parents go through the administrative process. Murphy v. Arlington Cent. Sch. Dist. Bd. of Educ., 297 F.3d 195, 199 (2d Cir. 2002). In stay-put proceedings under Section 1415(j), courts settle disputes about which academic setting should be considered a student's "current" educational placement. This finding determines where the student will "stay put" and be educated while administrative hearings (and eventual judicial review) proceed. M.R. v. Ridley Sch. Dist., 744 F.3d 112, 118 (3d Cir. 2014) (quoting Drinker ex rel. Drinker v. Colonial Sch. Dist., 78 F.3d 859, 867 (3d Cir. 1996)). Exhaustion is not required for stay-put challenges because "[t]he administrative process is 'inadequate' to remedy violations of § 1415(j)." Murphy, 297 F.3d at 199.

In their Amended Complaint (as opposed to their motion for a preliminary injunction, which was denied), the Parents did not raise a stay-put claim; nonetheless, they have sought to rely on the stay-put exception and have argued that, in complying with New Jersey's restriction against in-person schooling, the Educators changed their

11

children's current educational placements without the notice required by the IDEA. Parents' Opening Br. at 23–25; 33–37. The District Court rejected this argument because, even if a unilateral placement change could excuse a failure to exhaust, the Parents had not adequately alleged a change in placement. We agree.

In deciding what constitutes a change of placement, courts often draw a line between changes that specifically affect children with disabilities and changes motivated by budgetary or administrative concerns that affect a general student population; the former will often be found to effect a change in placement, but not the latter. D.M. v. New Jersey Dep't of Educ., 801 F.3d 205, 217 (3d Cir. 2015); N.D. ex rel. Parents Acting as Guardians Ad Litem v. Hawaii Dep't of Educ., 600 F.3d 1104, 1108 (9th Cir. 2010) (system-wide, financially motivated closure of schools on Fridays was "not [a] change[] in educational placement"); id. at 1116–17 (noting that holding otherwise would give "parents of disabled children veto power" over states' management of schools).[10]

Here, there was no change in placement where New Jersey's school closure was "a system-[w]ide administrative decision of general applicability – an order shutting schools to all students (abled and disabled) … during an unprecedented and life-threatening

---

[10] The Ninth Circuit gave one example of a change of placement that, out of context, would seem to support the Parents' argument. Explaining a change in educational programming as a change in placement, the Ninth Circuit gave the example of moving "from one type of program—i.e., regular class—to another type—i.e., home instruction." Id. at 1116. But critically, that example was followed by guidance that these decisions were to be "made in light of Congress's intent to prevent the singling out of disabled children and to 'mainstream' them with non-disabled children." Id. Thus, the Ninth Circuit's example does not indicate a change of placement occurs when an entire school system moves to home instruction for reasons totally unrelated to any student's disability.

12

health crisis." J.T. v. de Blasio, 500 F. Supp. 3d 137, 188 (S.D.N.Y. 2020).

Citing Honig v. Doe and NYS Association for Retarded Child., Inc. v. Carey, the Parents counter by arguing that the IDEA is meant to prevent schools from excluding disabled students even where a school invokes what might otherwise be a compelling reason, e.g., safety concerns. Parents' Opening Br. at 31, 34. Analogizing to such cases, the Parents argue that the IDEA did not permit schools to halt in-person instruction for disabled children despite the risks posed by COVID-19. Parents' Opening Br. at 34.

We are unpersuaded. Honig and Carey involved children with disabilities who faced the targeted exclusion that the IDEA does not tolerate. Honig v. Doe, 484 U.S. 305, 308 (1988) ("stay-put provision" did not permit exceptions for dangerousness where individual children were suspended for behaviors related to their disabilities); NYS Association for Retarded Child., Inc. v. Carey, 466 F. Supp. 479, 481 (E.D.N.Y. 1978) (finding an IDEA (formerly, the Education for All Handicapped Children Act) violation where disabled pupils afflicted with hepatitis B, but not similarly-situated non-disabled pupils, were excluded from schools). In this case, the transition to distance learning applied to all students regardless of disability. Thus, even if a unilateral change in placement could excuse a failure to exhaust, the Parents have not shown there was a change in placement here.

For the reasons set forth above, we will affirm the District Court's dismissal of the first eight counts of the Parents' Amended Complaint.[11]

---

[11]     As discussed supra, Section II.A. and footnote 7, although Counts Two through Eight were not IDEA claims, they are also subject to the exhaustion requirement because

B.      The RICO Count

The Parents also challenge the District Court's dismissal of Count Nine, which alleged that the individual Educators violated RICO (18 U.S.C. §§ 1961–1968). Specifically, the Parents alleged the Educators were involved "in a scheme to deprive Plaintiffs of IDEA Part B funds by making false representations to the USDOE about their compliance with the IDEA during the COVID-19 pandemic." A13. The District Court determined that these allegations failed because, among other things, the Parents lacked standing as "the alleged fraud was perpetrated on the United States government, not [the Parents]." A15–17.[12] We agree with the District Court's decision regarding the Parents' lack of standing and will affirm on that basis. Accordingly, we need not reach the other reasons cited by the District Court.

RICO prohibits a person, who is part of an enterprise that affects interstate commerce, from participating in the enterprise's affairs through a pattern of racketeering activity. Genty v. Resol. Tr. Corp., 937 F.2d 899, 906 (3d Cir. 1991) (citing 18 U.S.C. § 1962(c)). Such activity includes the commission of mail fraud and wire fraud. Care One Mgmt. LLC v. United Healthcare Workers E., 43 F.4th 126, 135 (3d Cir. 2022). RICO has both criminal and civil provisions and civil RICO suits may be "brought by

---

the Parents sought IDEA remedies and these claims concerned the denial of a FAPE; accordingly, they must be dismissed for the reasons set forth herein. 20 U.S.C. § 1415(*l*); Perez, 143 S. Ct. at 864–65; T.R., 4 F.4th at 195.

[12]     The District Court also questioned whether RICO establishes a private right of equitable relief, though it ultimately assumed as much for purposes of evaluating the Parents' RICO claim. Neither the Supreme Court nor this Court has decided that question. RJR Nabisco, Inc. v. Eur. Cmty., 579 U.S. 325, 354 n.13 (2016). We need not address this question to resolve the Parents' appeal.

14

any person injured 'in his business or property' by a RICO violation." Genty, 937 F.2d at 906 (quoting 18 U.S.C. § 1964(c)). To establish standing, a plaintiff must demonstrate that the alleged RICO violation is both a but for and proximate cause of her injury. Anderson v. Ayling, 396 F.3d 265, 269 (3d Cir. 2005). RICO does not permit suit where "the violation is … too remote from the injury." Allegheny Gen. Hosp. v. Philip Morris, Inc., 228 F.3d 429, 443 (3d Cir. 2000); see also St. Luke's Health Network, Inc. v. Lancaster Gen. Hosp., 967 F.3d 295, 300 (3d Cir. 2020) ("[P]roximate causation is employed in civil RICO … to stymie a flood of litigation, reserving recovery for those who have been directly affected by a defendant's wrongdoing.").

The Parents failed to plausibly allege injuries proximately caused by the purported RICO violations. In their Amended Complaint, the Parents alleged the individual Educators falsely assured the USDOE and NJDOE that the entity defendants (NJDOE and school districts) had IDEA-compliant policies and procedures in place from January to July 2019 and January to July 2020. The Parents alleged that these misrepresentations caused Part B funds to be unlawfully remitted in violation of the mail and wire fraud statutes. The Parents further alleged that they—as the intended beneficiaries of Part B funds—were resultantly defrauded of hundreds of millions of dollars in funding and suffered other harm "including significant regressions in skills and loss of competencies." A275, 306–07.

We agree with the District Court that these injuries are too remote to establish the Parents' standing. To the extent the purported misrepresentations caused the fraudulent remittance of Part B funds, the direct victim of said fraud would be the United States

15

government. J.T., 500 F. Supp. 3d at 166. The Parents' attempt to cast themselves as indirect victims is insufficient to establish standing, as the government would have the better claim for relief. St. Luke's, 967 F.3d at 301 ("[A] more direct victim … may also break the chain of causation."); Simpson-Vlach v. Mich. Dep't of Educ., No. 22-1724, 2023 WL 3347497, at *7 (6th Cir. May 10, 2023) (explaining in a similar case that plaintiffs' injuries were "passed-on" where the "false assurances were made to the [USDOE] … meaning that the federal government was the direct victim"). The Parents' alleged injuries from harms like skills regression are too remote and indirect to confer standing as the Parents failed to allege any connection between the claimed misrepresentations and these harms. Accordingly, we agree with the District Court that the Parents failed to establish standing to pursue Count Nine, for violations of RICO.[13]

## III.  CONCLUSION

For the foregoing reasons, we will affirm the District Court's order entered

---

[13]  Even if the Parents had shown standing, we would affirm the District Court's dismissal based on the Parents' failure to plausibly allege predicate acts. The Parents alleged violations of "federal mail and wire fraud statutes, 18 U.S.C. § 1341 and 18 U.S.C. § 1343." A278–79. Allegations of mail or wire fraud as the bases for a RICO violation must be "pled with specificity." Lum v. Bank of Am., 361 F.3d 217, 223 (3d Cir. 2004), abrogated in part on other grounds by Bell Atl. Corp. v. Twombly, 550 U.S. 544, 557 (2007). The Parents' allegations fail for at least two reasons. First, the Parents' claim that the Educators made misrepresentations in 2019, before the pandemic began in 2020. But the Amended Complaint does not allege that the Educators sought or received IDEA Part B funds in 2019 with any idea that they would close schools due to a pandemic. See J.T., 500 F. Supp. 3d at 170. Second, the Parents' allegations that the Educators misrepresented IDEA compliance in 2020 are not only vague but also untenable in light of the fact that the Educators relied on USDOE's own guidance that a FAPE could be provided through distance learning. See Roe v. Baker, 624 F. Supp. 3d 52, 62 (D. Mass. 2022), aff'd, Roe v. Healey, — F.4th —, 2023 WL 5199870 (1st Cir. Aug. 14, 2023).

16

September 12, 2022, dismissing the Parents' Amended Complaint for lack of subject matter jurisdiction and failure to state a claim.